———————————————————————————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————————————————————————————

### No. 11-18028

———————————————————————————————————

**JEFFREY HERSON, an individual, and EAST BAY OUTDOOR, INC., a California Corporation,**
**Plaintiffs-Appellants,**
v.
**CITY OF RICHMOND,**
**Defendant-Appellee.**

———————————————————————————————————

### APPELLANTS' OPENING BRIEF

**D.C. No. 4:09-cv-02516-PJH**
**U.S. District of Court for Northern California, Oakland**

———————————————————————————————————

**FRANK C. GILMORE, ESQ.**
**Nevada Bar No. 10052**
**ROBISON, BELAUSTEGUI, SHARP & LOW**
**A Professional Corporation**
**71 Washington Street**
**Reno, Nevada 89503**
**Telephone:      (775) 329-3151**
**Facsimile:      (775) 329-7169**
**Attorneys for Plaintiffs-Appellants-**
**Jeffrey Herson and East Bay Outdoors, Inc.**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

**CORPORATE DISCLOSURE STATEMENT** . . . . . . . . . . . . . . . . . . . . . xi

**STATEMENT OF JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** . . . . . . . 3

**STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    **A.**    **Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    **B.**    **Herson's Challenge To The RMC** . . . . . . . . . . . . . . . . . . . 12

    **C.**    **The Entry Of Discovery Sanctions**
          **Against Herson** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**SUMMARY OF ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    **A.**    **The District Court Erred By Ignoring Herson's**
          **Argument That An Unconstitutional Sign**
          **Ordinance Cannot Require Speakers To Obtain**
          **Sign Permits** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    **B.**    **The District Court Erred In Applying The**
          **Doctrines Of Standing** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**C.**     <u>**The District Court Erred By Dismissing The Complaint Without Addressing Herson's Challenge To The Design Review Requirement; The District Court Ignored The Significance Of Herson's Facial Challenge For Unfettered Discretion**</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      **1.**    *The Design Review Criteria Is Also Constitutionally Defective Because It Permits City Officials To Unconstitutionally Delay Permitting Of Signs*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

      **2.**    *The Old Sign Code Did Not Require The City To Articulate Its Reasons For Denying Permits, And In This Instance The City Did Not Articulate The Height And Size Restrictions As A Basis For Denying Herson's Applications*. . . . . . . . . . . . . . . 29

**D.**     <u>**The District Court Erred By Dismissing Herson's Complaint Without Addressing Herson's Challenges To The RMC's Conditional Use Permit Requirement**</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**E.**     <u>**The District Court Erred In Concluding That The "Height and Size" Limitation On Speech Located Within The Richmond Parkway Restricted Zone Is Not A Content-Based Restriction And Is Therefore Constitutional; The City Had No Valid And Constitutional Basis For Denying Herson's Off-Site Non-Commercial Sign Permit Applications**</u>. . . . . . . . . . . . . . 34

      **1.**    *The RMC's Height And Size Restrictions Are Clearly Content-Based*. . . . . . . . . . . . . . . . . . . . . . 37

2. *Herson's Applications For Sign Permits Did Not State Any Height And Size; The City Plainly Denied The Permits Based On Content, Not Height and Size* . . . . . . . . . . . . . . . 41

3. *The District Court Improperly Ignored The Unconstitutional Portions of The Height And Size Provisions* . . . . . . . . . . . . . . . . . . . . 43

F. **The Sign Code's Exemptions Render The Permitting Scheme Unconstitutional; The District Court Erred By Dismissing This Claim On The Basis Of Standing** . . . . . . . . . . . . . . . . . . . . . . . . . . 44

1. *The New Sign Code's Exemptions Are Similarly Unconstitutional* . . . . . . . . . . . . . . . . . . . . 48

a. The New Sign Code Unconstitutionally Exempts "Realty Signs." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

G. **The District Court Erred In Dismissing Herson's Claims Related To The New Sign Code, And In Refusing To Delve Into The Constitutionality Of The Provisions Of The New Sign Code** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

H. **Issues Of Fact Remain On Equal Protection** . . . . . . . . 54

1. *The City, By Giving Officials Unfettered Discretion To Rule On Sign Permits, Gave Officials The Power To Discriminate Based Upon Content* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

2. *Herson's "Class of One" Claim Raised Genuine Issues of Material Fact* . . . . . . . . . . . . . . . 57

iii

**I.    The District Court Erred By Dismissing Herson's Claims for Injunctive Relief.** . . . . . . . . . . . . . . . . . . . . . . . 61

**J.    The District Court Abused Its Discretion In Entering An Order Of Sanctions Against Herson** . . . . . 62

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

**STATEMENT OF RELATED CASES**. . . . . . . . . . . . . . . . . . . . . . . . . 65

**CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT RULE 32-1**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

iv

# TABLE OF AUTHORITIES

## Case Authority

Baldwin v. Redwood City, 540 F.2d 1360 (9th Cir. 1976). . . . . . . . . . . . . . . 21

Ballen v City of Redmond, 466 F.3d 736 (9th Cir. 2006). . . . . . . . . . . . . . . 51

Berry v. Dept. of Social Services, 447 F.3d
642 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986). . . . . . . . . . .  62

Center for Fair Public Policy v. Maricopa County,
336 F.3d 1153 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

Central Hudson Gas & Electric Corp. v. Public Service
Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). . . . . . . . . . . 51

Childress v. Darby Lumber, Inc., 357 F.3d
1000 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Citizens United v. FEC, –––U.S. ––––, 130 S.Ct. 876,
175 L.Ed.2d 753 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

City of Ladue v. Gilleo, 512 U.S. 43 (1994). . . . . . . . . . . . . . . . . . . . . .  21, 38, 41

City of Lakewood v. Plain Dealer Publishing Co.,
486 U.S. 750 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

Columbia Basin Apartment Ass'n v. City of Pasco,
68 F.3d 791 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Desert Outdoor Advertising, Inc. v. City of Moreno Valley,
103 Fd 814 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . 23, 25, 26, 38, 44, 46, 47, 49

Forsyth County, Ga. v. Nationalist Movement,
505 U.S. 123, 112 S.Ct. 2395 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

Foti v. City of Menlo Park, 146 F.3d 629 (9th Cir. 1998). . . 44, 46, 47, 49, 50

FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990). . . . . . . . . . . . . . . .  27, 29

Herson v. City of San Carlos, 714 F. Supp.2d
1018 (N.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Le v. Astrue, 558 F.3d 1019 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lim v. City of Long Beach, 217 F.3d 1050 (9th Cir. 2000). . . . . . . . . . . . . .  26

Long Beach Area Peace Network v. City of Long Beach,
574 F.3d 1011 (9th Cir.2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

Lopez v. Candaele, 630 F.3d 775 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . .  22

Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981). . . . . . . . . . . . . 51

Monell v. Department of Social Services, 436 U.S. 658 (1978). . . . . . .  55, 56

Montana Chamber of Commerce v. Argenbright,
226 F.3d 1049 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

N.A.A.C.P v. City of Richmond, 743 F.2d at 1357. . . . . . . . . . . . . . . . . . . . .  60

National Outdoor Advertising v. City of Orange, 861
F.2d 246 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

Nelson v. City of Irvine, 143 F.3d 1196 (9th Cir. 1998). . . . . . . . . . . . . . . .  33

Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d
898 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  48

Palmer v. Pioneer Inn Assoc., Ltd., 338 F.3d
981 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Regan v. Time, Inc., 468 U.S. 641, 104 S.Ct. 3262,
82 L.Ed.2d 487 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Smith v. Pacific Props. & Dev. Corp., 358
F.3d 1097 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Solantic, LLC v. City of Neptune Beach, 410 F.3d
1250 (11th Cir.2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

Thomas v. Chicago Park Dist., 534 U.S. 316,
122 S.Ct. 775 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 61

United States v. Ritchie, 342 F.3d 903 (9th Cir. 2003). . . . . . . . . . . . . . . 33

Village of Willowbrook v. Olech, 528 U.S. 562, 120
S.Ct. 1073 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55, 56, 57

Waste Action Project v. Dawn Mining Corp., 137 F.3d
1426 (9th Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Young v. City of Simi Valley, 216 F.3d 807 (9th Cir. 2000). . . . . . . . . . . . . 61

## **Statutes**

FRAP 3(c)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

FRAP 4(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FRCP 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

FRCP 56(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

U.S. Const. Art. III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

## **Ordinances**

Ordinance No. 29-09 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Richmond Municipal Code § 4.04 . . . . . . . . . . . . . . . . . . . . . . . .  7, 12, 52, 53

Richmond Municipal Code § 4.04.040 . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Richmond Municipal Code § 4.04.04(I) . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Richmond Municipal Code § 15.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 31, 53

Richmond Municipal Code § 15.04.910.  . . . . . . . . . . . . . . .  12, 31, 32, 52, 53

Richmond Municipal Code § 15.04.910.010(B) . . . . . . . . . . . . . . . . . . . . . 33

Richmond Municipal Code § 15.04.910.050(A) . . . . . . . . . . . . . . . . . . . . . 33

Richmond Municipal Code § 15.04.930.  . . . . . . . . . . . . .  12, 18, 23, 25, 52, 53

Richmond Municipal Code § 15.04.930.020 . . . . . . . . . . . . . . . . . . . . . . . . 21

Richmond Municipal Code § 15.04.930.030 . . . . . . . . . . . . . . . . . . . . . . . . 21

Richmond Municipal Code § 15.04.930.110(A)(2).  . . . . . . . . . . . . . . . . . . 24

Richmond Municipal Code § 15.04.930.120(B) . . . . . . . . . . . . . . . . . . . . . 28

Richmond Municipal Code § 15.04.980.  . . . . . . . . . . . . . . . . . . 13, 28, 52, 53

Richmond Municipal Code § 15.04.980.040 . . . . . . . . . . . . . . . . . . . . . . . 28

Richmond Municipal Code § 15.05.050(1)(h).  . . . . . . . . . . . . . . . . . . . . . . 37

viii

Richmond Municipal Code § 15.06. . . . . . . . . . . . . . . . . . . . . 7, 9, 11, 13, 52, 53

Richmond Municipal Code § 15.06.020A. . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Richmond Municipal Code §15.06.040. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Richmond Municipal Code § 15.06.050(1)(h). . . . . . . . . . . . . . . . . . . . . . . . 39

Richmond Municipal Code § 15.06.060. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Richmond Municipal Code § 15.06.070 . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 49

Richmond Municipal Code § 15.06.070(A)(ii) . . . . . . . . . . . . . . . . . . . . 52, 54

Richmond Municipal Code § 15.06.070(A)(1)(o). . . . . . . . . . . . . . . . . . . . . 50

Richmond Municipal Code § 15.06.080. . . . . . . . . . . . . . . . . . . . . . . . . 10, 42

Richmond Municipal Code § 15.06.080(3). . . . . . . . . . . . . . . . . . . . . . . . . . 40

Richmond Municipal Code §  15.06.080(C)      35, 38

Richmond Municipal Code § 15.06.080(c)(5). . . . . . . . . . . . . . . . . . . . . 37, 38

Richmond Municipal Code § 15.06.080(C)(6)(g)(ii). . . . . . . . . . . . . . . . 4, 36

Richmond Municipal Code § 15.06.080(C)(8). . . . . . . . . . . . . . . . . . . . . . . 38

Richmond Municipal Code § 15.06.080(C)(8).1. . . . . . . . . . . . . . . . . . . . . . 39

Richmond Municipal Code § 15.06.080(G)(3)(i). . . . . . . . . . . . . . . . . . . . . 10

Richmond Municipal Code § 15.06.080(h)(i). . . . . . . . . . . . . . . . . . . . . . . . 40

Richmond Municipal Code § 16.06.040. . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Richmond Municipal Code § 16.06.080(C)(8). . . . . . . . . . . . . . . . . . . . . . . 60

Richmond Municipal Code § 187.06.080(C)(1)........................ 11

Uniform Sign Code Section 303..................................  50

## <u>CORPORATE DISCLOSURE STATEMENT</u>

East Bay Outdoor, Inc. is a California corporation that does not have a parent corporation.  Further, no publicly held corporation owns 10% or more of East Bay Outdoor, Inc.'s stock.

## <u>STATEMENT OF JURISDICTION</u>

Plaintiffs/Appellants JEFFREY HERSON and EAST BAY OUTDOOR, INC. (collectively "Herson") brought an action in the United States District Court, Northern District of California ("District Court"), pursuant to 42 U.S.C. § 1983 for alleged violations of Herson's constitutional rights. The District Court had jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 & 1343.

On May 11, 2010, the District Court entered an Order Granting in Part and Denying in Part Defendant/Appellee CITY OF RICHMOND's (hereinafter "City") Motion for Judgment on the Pleadings (ER 094-99, Doc#48). That Order was not an appealable Order under 28 U.S.C. §1291

On August 10, 2010, the District Court entered an Order Granting in Part and Denying in Part the City's Motion to Dismiss Plaintiff's Second Amended Complaint (ER 090-93, Doc#61). That Order was not an appealable Order under 28 U.S.C. §1291.

On April 25, 2011, the District Court entered an Order Granting in Part and Denying in Part the City's Motion for Summary Judgment (ER072-89, Doc#137). That Order was not an appealable Order under 28 U.S.C. §1291.

On August 11, 2011, the District Court entered an Order granting the

1

City's Motion for Sanctions against Herson for spoliation of evidence. (ER 063-71, Doc#170). That Order was not an appealable Order under 28 U.S.C. § 1291.

On December 5, 2011, the District Court entered its Order Granting the City's Motion for Summary Judgment. (ER 035-41, Doc#190). Pursuant to that Order, Judgment was entered on December 5, 2011. (ER 034, Doc#191). The Order, and resulting Judgment, was a final judgment that disposed of all of Herson's claims.

On December 20, 2011, Herson filed a Notice of Appeal, appealing from the District Court's Orders Granting Summary Judgment. (ER 001-33, Doc#196). The Notice of Appeal was filed less than thirty (30) days after the entry of Summary Judgment and entry of the Judgment. Accordingly, Herson's appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(A).

The Notice of Appeal identifies the appeal of the (1) Order Granting in Part and Denying in Part the City's Motion for Summary Judgment, (2) Order Granting the City's Motion for Summary Judgment, and (3) Judgment. However, pursuant to Fed. R. App. P. 3(c)(1)(B), Herson also appeals the District Court's interlocutory (a) Order Granting the City's Motion for Judgment on the Pleadings in Part and Denying Motion in Part

2

(ER 094-99, Doc#48), (b) Order Granting in Part and Denying in Part the City's Motion to Dismiss Plaintiff's Second Amended Complaint (ER 090-93, Doc#61), and (c) Order Re Motion for Sanctions (ER 063-71, Doc#170).[1]

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issues presented on appeal are as follows:

1.     Whether the District Court erred by concluding that an unconstitutional sign ordinance can require sign permits.

2.     Whether the District Court applied the incorrect standards for Article III standing when faced with a facial challenge to unconstitutional sign permitting scheme that regulates speech based on content.

3.     Whether the District Court erred by dismissing Herson's Complaint without addressing the claim that the "design review" requirement of the RMC is facially unconstitutional;

4.     Whether the District Court erred in concluding that Herson did not properly allege constitutional challenges to the conditional use permit

---

[1] In appealing the Judgment, Herson intended to challenge the interlocutory Orders entered in error that led to the Judgment. This Court has held that FRAP 3(c)(1)(B) is to be read liberally. In <u>Le v. Astrue</u>, 558 F.3d 1019, 1093 (9th Cir. 2009), this Court explained that a "non-technical approach to construing notices of appeal is consistent with the requirement in Rule 3 that an appeal must not be dismissed for informality of form or title of the notice of appeal."

("CUP") of the Richmond Municipal Code ("RMC");

5. Whether the District Court erred in concluding that the "height and size" provisions of the RMC (§15.06.080(C)(6)(g)(ii)) provided a constitutional basis for the City to deny Herson's sign permit applications, even though the City provided no evidence that it denied Herson's permit applications on that basis;

6. Whether the District Court erred in dismissing Herson's claims related to the RMC "exemptions;"

7. Whether the District Court erred in dismissing Herson's claims related to the new sign code when the Court refused to consider the ramifications of the unconstitutional provisions remaining (see Order Granting Summary Judgment in Part, ER080, Doc#137, p. 9:8-12);

8. Whether the District Court erred in dismissing Herson's claim that the RMC is unconstitutional because it fails to impose proper time limits on government officials who review sign permit applications;

9. Whether the District Court erred in concluding that Herson had failed to establish a genuine issue of material fact with respect to the equal protection "class of one" claim (see Order Granting Summary Judgment in Part, ER 089, Doc#137, p. 18:5-9);

10. Whether the District Court erred in dismissing Herson's claims

4

for injunctive relief;

11.    Whether the District Court erred in entering an award of sanctions in favor of the City, and against Herson, for alleged spoliation of electronic data (see Order Re Motion for Sanctions, ER 063-71, Doc#170);

**STANDARD OF REVIEW**

In ruling on Richmond's Motion for Judgment on the Pleadings, the District Court dismissed Herson's claim that the conditional use provision ("CUP") of the RMC was unconstitutional.  (Order Granting Motion for Judgment on the Pleadings, ER 095, Doc#48, p. 2:5-9).  That dismissal was made without leave to amend.  Accordingly, appellate review is de novo.  See Smith v. Pacific Props. & Dev. Corp., 358 F.3d 1097, 1100 (9th Cir. 2004).  Further, underlying legal determinations require de novo review.  (Id.)

The District Court granted the City's Motion for Summary Judgment.  A grant of summary judgment is reviewed de novo.  Waste Action Project v. Dawn Mining Corp., 137 F.3d 1426, 1428 (9th Cir. 1998).  The District Court's analysis of substantive law is to be reviewed de novo.  Montana Chamber of Commerce v. Argenbright, 226 F.3d 1049, 1054 (9th Cir. 2000).  In addition, this Court reviews de novo the constitutionality of state laws.  (Id.)

Herson has appealed the District Court's entry of a discovery sanction against Herson. (Order Re Motion for Sanctions, ER 063-71, Doc#170). The imposition of discovery sanctions is reviewed for an abuse of discretion. <u>Childress v. Darby Lumber, Inc</u>., 357 F.3d 1000, 1010 (9th Cir. 2004). When the imposition of discovery sanctions turn on the resolution of a legal issue, review is de novo. <u>Palmer v. Pioneer Inn Assoc., Ltd.</u>, 338 F.3d 981, 985 (9th Cir. 2003).

Constitutional issues are reviewed de novo. <u>Berry v. Dept. of Social Services</u>, 447 F.3d 642, 648 (9th Cir. 2006).

## <u>STATEMENT OF THE CASE</u>

This is an action for declaratory relief, injunctive relief, and damages under 42 U.S.C. § 1983. ***Herson is challenging  the City's restrictions on off-site  signs,  which are governed by the Richmond Municipal Code*** ("RMC"). (ER 1063-1068, Doc#63, ¶¶20-46). Herson also challenged the City's denial of Herson's applications for sign permits. (ER 1062, Doc#63, ¶17).

In response to Herson's Complaint, the City attempted to amend the RMC, thereby starting the process for enacting a new sign code. On August 17, 2009, the District Court entered an Order dismissing the Complaint on the basis of mootness. (Doc#27). On August 19, 2009, the District Court

6

entered a stipulated Order reviving the claims, and permitting Herson to file an amended Complaint. (ER 1303-1307, Doc#28).

On or about September of 2009, the City formally amended the RMC to revise its sign code (RMC §§4.04, 15.04, and 15.06 - hereinafter the "New Sign Code").

On November 2, 2009, Herson filed an amended complaint (Doc#38). In response, the City filed a Motion for Judgment on the Pleadings. (Doc#41). On May 11, 2010, the District Court granted the motion in part and denied the motion in part, permitting Herson to file an amended Complaint. (ER 094-99, Doc#48).

On May 29, 2010, Herson filed his Second Amended Complaint. (ER 1181-1302, Doc#49). In response, the City filed a motion to dismiss. (Doc#50). On August 2, 2010, the District Court entered an Order granting in part and denying in part the Motion to Dismiss, and giving leave to amend. (ER 090-93, On Doc#61).

On August 11, 2010, Herson filed his Third Amended Complaint. (ER 1059-1180, Doc#63).

On January 26, 2011, the City filed a Motion for Summary Judgment. (Doc#88). On April 25, 2011, the District Court entered an Order granting in part and denying in part the Motion for Summary Judgment, which

7

included leave for the parties to file supplemental briefs on the issue of standing related to "height and size." (ER 072-89, Doc#137). On July 27, 2011, the parties each filed their respective Supplemental Motions for Summary Judgment on the issue of standing as it related to "height and size." (Doc#160 & 161, respectively). On December 5, 2011, the District Court entered its Order granting summary judgment. (ER 034-41, Doc#90). Pursuant to that Order, Judgment was entered on December 5, 2011. (ER 034, Doc#191).

Meanwhile, on March 9, 2011, the City filed its Motion for Sanctions for Spoliation. (Doc#114). On August 11, 2011, the Magistrate Judge entered an Order granting the City's motion for sanctions. (ER 063-71, Doc#170). On September 9, 2011, Herson filed a Notice of Appeal, challenging the Magistrate Judge's Order. (ER 053-62, Doc#177). On September 12, 2011, the District Court entered its Order affirming the order of the Magistrate Judge. (ER 051-52, Doc#176). On October 11, 2011, Herson filed a Notice of Appeal, challenging the Magistrate Judge's Order. (ER 042-050, Doc#183).

On December 20, 2011, Herson filed his Notice of Appeal, challenging entry of Summary Judgment, and the Judgment. (ER 001-33, Doc#196).

8

## STATEMENT OF FACTS

### A.   Background

Herson wishes to place 13 signs within the city of Richmond.  Eleven Signs are to be oriented to, and within 660 feet of, Richmond's freeways. The remaining two signs are oriented to be viewed from surface streets.  At least a portion of each face of each sign will contain Herson's noncommercial speech.  Herson may receive a fee from others for speech placed on the remaining portion of each face.  (ER 1061, Doc#63 ¶¶10).

Herson has made a facial and as-applied challenge to the City's restrictions of off-site signs, which restrictions are located in RMC 15.06.[2] One of the signs (designated in the Complaint as  Sign 5) was first displayed prior to the filing the Complaint. (ER 1061-1062, Doc#63, ¶12).   At all times, Sign 5 has been displaying the language "Vote for Betty Chu on July 14[th]." (Id. at ¶12).  The District Court acknowledged that sign 5 was permitted under the RMC (pre-amendment), and the City has not appealed;

---

2  In  Citizens United v. FEC, –––U.S. ––––, 130 S.Ct. 876, 893, 175 L.Ed.2d 753 (2010), the Supreme Court explained that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."  The Court explained that the "distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." Id.

accordingly, Sign 5 is not in issue in this appeal.

On June 26, 2009, Herson submitted applications to the City to display the other 12 signs at issue. (Id. at ¶17; ER 1145-1154, Doc#63-2, pp. 35-44). On the same day, the City denied each of the applications with a notation that the signs were "Not allowed per Section 15.06.080 of the Richmond Sign Ordinance." (Id. at ¶12; ER 1111-1180, Doc#63-2). No other notation was made on the applications as to why they were rejected by the City. (Id.)

The RMC in effect on the date of the applications contained a provision, at Section 15.06.080(G)(3)(i), which permitted political signs to be displayed within 660 feet of any freeway right-of-way, provided the sign copy was not visible from the freeway. Eleven of Herson's proposed signs were proscribed by RMC 15.06.080(G)(3)(i), because Herson intended to make these signs visible and oriented to the freeway. The other two signs proposed by Herson were proscribed by RMC 187.06.080(C)(1), which limits the content of any other signs located within 660 feet of the free way right-of-way (hereinafter the "Richmond Parkway Restriction Zone"). According to RMC 187.06.080(C)(1) at the time Herson filed the Complaint, certain types of speech were permitted within the Richmond

10

Parkway Restriction Zone, while all other types of speech were proscribed. Herson alleged that the RMC was unconstitutional because it permitted some types of speech – based on its content – while prohibiting other types of speech with in the Richmond Parkway Restriction Zone.  (ER 1136, Doc#63-2, p. 26).

On July 7, 2009, in direct response to the Herson Complaint, the City Council repealed the former RMC Chapter 15.06 (hereinafter the "Old Sign Code"), and adopted a 120-day moratorium on the erection, or relocation of permanent signs within the City limit.  (ER 1156, Doc#63-2, p. 46).  On August 9, 2009, the City released a draft revised sign ordinance for public review.  (ER 1157, Doc#63-2, p. 47).  After public comment, on August 13, 2009, the City released a second revised proposed draft Sign Code.  (Id.) Then, in September 2009, the City enacted an Ordinance (No.29-09) which repealed the Old Sign Code 15.06, to be replaced with an amended RMC Chapter 15.06 (the "New Sign Code").  (ER 1157, Doc#63-2, p. 47).

On June 1, 2010, in direct response to the Herson's claims, the City Council presented an amendment to the RMC, Chapter 15.06.070.  (ER 1180, Doc#63-2, p. 70).  After comment, an amendment to the RMC was passed on June 15, 2010, which amended the RMC provisions that dealt with "Exempted Signs."  (ER 1180, Doc#63-2, p. 70).  The amendment

11

altered the types of signs that were exempted from the Sign Code.  (Id.)

## B.     **Herson's Challenges To The RMC.**

Herson brought a facial and as applied challenge to both the Old Sign Code and the New Sign Code.  (ER 1063-0168, Doc#63, ¶¶20-46).  Herson has alleged that the Old Sign Code:

> facially violated the First and Fourteenth
> Amendments to the United States Constitution by
> containing content-based restrictions that give
> greater protection to commercial speech than
> noncommercial speech and by regulating speech
> based on content.

(ER 1063, Doc#63, ¶21).  Herson attached to his Complaint those portions of the Sign Code which he alleged was in violation of his First Amendment rights, including :

- Chapter 4.04 (exemptions for real-estate signs) of the Old Code (Exhibit 1 to the Third Amended Complaint (ER 1072-1078, Doc#63-1);

- Chapter 15.04.910:  conditional use permits – of the Old Code (Exhibit 2 to the Third Amended Complaint (ER 1079-1097, Doc#63-1);

- Chapter 15.04.930: design review – of the Old Code (Exhibit 3 to the Third Amended Complaint (ER 1098-1107, Doc#63-1);

- Chapter 15.04.980: appeals – of the Old Code (Exhibit 4 to the Third Amended Complaint (ER 1108-1110, Doc#63-1);

- Chapter 15.06: Use and Display of Signs – of the Old Code (Exhibit 5 to the Third Amended Complaint (ER 1111-1144, Doc#63-2)(ER 1060, Doc#63, ¶7).

**C.    <u>The Entry Of Discovery Sanctions Against Herson</u>.**

On November 23, 2009, the City served Herson with discovery requests, seeking copies of those documents Herson provided to the City as part of the permit applications.  (ER 106, Doc#115, ¶ 2).  On August 16, 2010, the City sent Herson correspondence requesting supplemental responses regarding any plans Herson may have had with him when he filed the sign permit applications.  (<u>Id</u>.)  Later that month, counsel for the parties spoke on the phone regarding the request for supplemental production.  (<u>Id</u>.)  Herson's counsel explained that all the existing paper and electronic records in Herson's possession had been provided.  (<u>Id</u>.)

In October 2010, the City deposed Herson.  (ER 064, Doc#170, p. 2). At the deposition, Herson testified that he had prepared the site plans for the Richmond sign applications using AutoCAD software on his computer and **<u>might</u>** have them available on his computer.  (<u>Id</u>.)  After the deposition, Herson reviewed his computer files and concluded that he had

13

not saved the CAD files, but had instead printed them out in hard copy. (Id.) Accordingly, Herson amended his deposition testimony to explain that he did not save the site plans on his computer after he printed them out in hard copy. At his deposition, Herson also testified that about a year after filing the lawsuit he restored his computer to its factory settings in response to an internet virus, essentially deleting his hard drive. (Id.)

Sometime shortly after the deposition, the City demanded that Herson produce his computer for forensic analysis. (Id.) Among other things, Herson explained to the City that each of the plans Herson had prepared on his computer were printed in hard copy and each of the copies were in the possession of the City. (ER 101-102, Doc#135, pp. 2-3). The City then demanded that Herson produce his computer for a forensic inspection to recover any deleted documents responsive to Defendant's discovery requests. (ER 106, Doc#170, p. 2). The City demanded that Herson pay for the cost of the forensics, to which Herson refused, explaining that all of the relevant records had been produced, and the demand for the computer was an unauthorized fishing expedition. (ER 297-299, Doc#115, Ex. 14). Nevertheless, on December 23, 2010, Herson produced his computer for inspection by the City's forensic computer

14

experts.  (ER 317, Doc#116, ¶ 3).  The forensic inspection confirmed that Herson had performed an operating system re-installation.  (Id.)

However, the forensic inspector then provided the District Court with unsubstantiated conjecture about what might have been contained in the computer prior to re-installation.  (Id. at ¶6).  Herson's forensic expert – the same expert who assisted with the re-installation – opined that Herson had performed a "non-destructive system recovery, which has the effect of restoring the operating system without wiping prior data contained on the hard disk."  (Doc#136, ¶13).  The same expert also opined that the re-installation was necessary because of a corruption in the file registry.  (Id. at ¶14).  The expert then located some recovered CAD files on the hard drive, but was not able to confirm if any of those drawings dealt with the City's permit applications.  (Id. at ¶17).

The City's forensic expert concluded that the computer did not have any "Richmond" files on it, and that the deleted files "might have been recoverable if they had not been overwritten by subsequent use of the computer."  (ER 318, Doc#116, ¶6).  The City's Expert charged $3,553.79 for the work.  (Id. at ¶8).  Herson's expert opined that the entire forensic review should have been done for less than $1,500.  (Doc#136, ¶22).

Even though the forensic report evidenced that Herson had not

15

intentionally deleted any files, and that the computer had not been corrupted, the City then sought recovery of costs and fees related to the forensic review. (ER 109, Doc#115, ¶¶27-28).

The City requested 79.6 hours of legal fees reimbursed for the effort of having the Herson computer analyzed, which included 60 hours of an associate billing at the rate of $200 per hour. (Id.) The City then filed a Reply in Support of its Motion, and demanded reimbursement of 114 hours of legal billings, at the cost of $29,815, including an amazing 34 hours for drafting a Reply brief that was 11 pages long and regurgitated the same arguments in the Motion. (Doc#141, at ¶¶4-6)(the Reply is Doc#140).

The District Court (Magistrate Judge) concluded that "it is possible that relevant files were on the computer as per Herson's original testimony," and although the deletion of files was not done in bad faith, and that the City "was unable to prove that any evidence was destroyed by the very nature of Herson's misconduct," that "it is likely that relevant files were on the computer and the forensic inspection was necessary to try to ascertain their existence and recover them." (ER 067-069, Doc#170, pp. 5-7). Accordingly, the District Court determined that Herson should be sanctioned the amount of $15,000 (which included $11,750 in fees and $3,250 in costs). (ER 071 at p. 9). This appeal followed.

16

## SUMMARY OF THE ARGUMENT

The Supreme Court has repeated, *ad nauseum*, that "Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." <u>Regan v. Time, Inc.</u>, 468 U.S. 641, 648–649, 104 S.Ct. 3262, 3267, 82 L.Ed.2d 487 (1984). Such is the case here. The City's sign permitting scheme is rife with content based preferences, unfettered discretion and unconstitutional prior restraint. The City's scheme fails and must be struck down. The District Court erred by dismissing Herson's claims.

This dispute arises from the refusal to allow Herson to display signs for non-commercial, political, and other speech based on now-repealed provisions in the City's ordinance. Herson is therefore challenging the City's restrictions that control the use and display of off-site signs (often referred to as "billboards"), and the methods with which the City concurrently permits some speakers to display speech, while denying Herson that same permission. The District Court erred by allowing the City to continue requiring a sign permit to erect signs notwithstanding the admission that the Sign Code contained unconstitutional, content-based restrictions of speech.

Further, the District Court made several other material and

17

prejudicial errors, as set forth below.  First, the District Court erred by dismissing Herson's Complaint without addressing Herson's claim that the "design review" requirement of the RMC (§15.04.930) is facially unconstitutional.

Second, the District Court erred in dismissing Herson's claim that the conditional use permit ("CUP") of the RMC violated his constitutional rights.  The District Court wrongly concluded that Herson had not properly alleged a cause of action related to the CUP, finding that the CUP was not formally in the Sign Code, but was instead in the City's Zoning Ordinance. The CUP provisions of the RMC <u>do in fact regulate the process for which permission for sign placement is granted</u>.

Third, the District Court improperly sidestepped the constitutional infirmities of the Old Sign Code by finding that Herson could not meet the redressibility element of standing.  The District Court's rationale was that – although portions of the Old Sign Code are admittedly content-based and unconstitutional – the City could have properly denied Herson's permit applications based on height and size.  Here, the Court erred.  The District Court failed to give due consideration to the fact that when the City's officials denied the application, there was no mention of any denial based on height and size.  To the contrary, the City denied the permits solely

18

because the proposed speech was banned within the Richmond Parkway Restriction Zone.

The District Court further erred by classifying the Old Sign Code's height and size restrictions as content-neutral restrictions subject only to intermediate constitutional scrutiny.  Well-established precedent from this Court makes clear that the Old Sign Code's height and size restrictions are classic content-based restrictions on speech subject to strict scrutiny because they require City officials to examine a proposed sign's contents and make a judgment regarding the content before a determination can be made about the applicable height, size, and exemptions.

Fourth, the District Court erred in dismissing Herson's claims related to the New Sign Code when it concluding that Herson failed to specifically allege his challenges to the particular provisions of the New Sign Code.  The District Court concluded that "these issues were not raised in the underlying operative complaint, and accordingly fall outside its scope. (Order Granting Summary Judgment in Part, ER 080, Doc#137, p. 9:8-12). This was error.

Fifth, the District Court erred in concluding that Herson had failed to establish a genuine issue of material fact with respect to the equal protection "class of one" claim, and the content-based exemptions.  (ER

089, Doc#137, p. 18:5-9).  This was error because their remains a question of fact as to whether the city intentionally treated Herson differently than similarly situated sign owners.

Sixth, the District Court erred in dismissing Herson's claims for injunctive relief, wherein he requested an injunction prohibiting the City from requiring a sign permit or other prior approval in order to be eligible to apply for a  building permit.  The District Court concluded that this was an impermissive attempt to seek injunctive relief to remedy a past wrong. This was error.

Lastly, the District Court erred in entering an award of sanctions in favor of the City, and against Herson, for alleged spoliation of electronic data.  The District Court abused its discretion in awarding sanctions, and abused its discretion in awarding $15,000.  (ER 063-71, Doc#170).

## **ARGUMENT**

### A.   **The District Court Erred By Ignoring Herson's Argument That An Unconstitutional Sign Ordinance Cannot Require Speakers To Obtain Sign Permits.**

As an initial matter, the District Court misperceived Herson's intended outcome of the litigation.  Herson is not asking this Court for an order allowing for the posting of signs.  Rather, Herson contends that no prior approval from the City can be mandated by the City in order for

20

Herson to be eligible to apply for a building permit to display his speech. No prior approval can be required because the RMC was and is a content-based, unconstitutional, restriction on speech and therefore, the City cannot require a sign permit to speak.

Signs "are a form of expression protected by the Free Speech Clause" City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994).   As this court has opined, "Communication by signs and posters is virtually pure speech."  Baldwin v. Redwood City, 540 F.2d 1360, 1366 (9th Cir. 1976).

Under the Old Sign Code, in order to obtain a building permit for a sign, the applicant must obtain a sign permit.  The sign permit required review by the Design Review Board, the Planning Commission, or the Planning Director.   (Old Sign Code §§15.06.040, 15.04.930.020, 15.04.930.030).  Each of the challenges below seek to invalidate the requirement that Herson first obtain a sign permit in order to obtain a building permit to display his speech.  As set forth in detail below, 1) the sign permit requirements contain content-based distinctions in violation of the First Amendment; 2)  the conditional use permit and design review standards give unfettered discretion to City officials in violation of the First Amendment; and 3) other speakers have been given sign permit approval, but Herson was denied such approval in violation of his rights under the

21

First and Fourteenth Amendments.

The signs desired by Herson are plainly banned by RMC. Thus, this is not a case in which a plaintiff has made an abstract claim of violation of First Amendment rights. Rather, this case involves the City's direct denial of the right to speak when it denied Herson's applications for sign permits. Accordingly, Herson will meet his burden by merely showing that his speech was restricted by government action; the City then will have the burden of establishing that all of its ordinances that restrict Herson's proposed speech are constitutional. Lim v. City of Long Beach, 217 F.3d 1050, 1054 n.4 (9th Cir. 2000). The City cannot meet its burden.

## B.    The District Court Erred In Applying The Doctrines Of Standing.

In order to secure access to the federal courts, litigants must establish standing as a threshold requirement under Article III of the United States Constitution. Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 796-97 (9th Cir. 2001). To establish standing, and invoke jurisdiction of the courts, a plaintiff must allege: 1) an injury in fact; 2) causation; and, 3) a likelihood that a favorable decision will redress the plaintiff's alleged injury. Lopez v. Candaele, 630 F.3d 775, 785 (9th Cir. 2010).

Here, there is no dispute that the City denied Herson's application for

22

sign permits.  Accordingly, the injury in fact was the denial of the right to speak.  The denial of the right to speak was the sole causation of the injury.  Thus, the first two factors of standing are met.  The third factor, redressibility, must be evaluated with respect to each claim presented.  However, where, as here, the noncommercial speech which Herson proposed to display was expressly banned by the City, any applicable permit requirement was futile.  As such, Herson has standing to challenge the permit requirement, "even though he did not apply for permits, because applying for a permit would have been futile."  Desert Outdoor Advertising, Inc. v. City of Moreno Valley, 103 F.3d 814, 818 (9th Cir. 1996).  Herson also has standing to challenge the permit requirement, even though he did not apply for permits, because applying for a permit would have been futile.  (Id.)

### C.   The District Court Erred By Dismissing The Complaint Without Addressing Herson's Challenge To The Design Review Requirement; The District Court Ignored The Significance Of Herson's Facial Challenge For Unfettered Discretion.

The District Court erred by dismissing Herson's Complaint without analysis of Herson's claim that the "design review" requirement of the RMC §15.04.930 (which was never amended) is facially unconstitutional.

In his Complaint, Herson clearly and plainly alleged that the "design

23

review" requirement violates the First Amendment because it is a content-based limitation to the display of speech, and because it gives the City officials unfettered discretion to grant or deny a permit based on subjective standards.  (See Complaint, ¶¶19-23) (with respect to Design Review, "*The Sign Ordinance does not further define any of these purportedly limiting terms with objective criteria.  These standards for granting permits are not narrow, objective, and definite, and are plainly contrary to the First Amendment.*")

According to the RMC, all sign applicants are subject to either  design review or administrative design review prior to the City issuing a sign permit.  RMC 15.04.930.110(A)(2).  The  reviewing board must determine whether the:

> the location, size, design, and characteristics of the proposed project will be compatible with and will not be detrimental to the public health, safety, or welfare of persons residing in or working in or adjacent to the proposed project.

(Id.)

The City has conceded that all sign permit applications are subject to Design Review.  (See City's Motion for Summary Judgment, p. 25:3-4, Doc#88).  RMC §16.06.040 provides that no sign may be erected without receiving approval of the size, design, and dimensions pursuant to RMC

24

§15.04.930.  Accordingly, before any sign may be permitted in Richmond, the applicant must first be subject to review in which the City official makes a determination based on the "detriment to the public health, safety and welfare."  The RMC, meanwhile, provides no explicit guidelines upon which the City official is to apply the standard.  Accordingly, this mandatory review invalidates the sign permit required.

This Court has long held that a licensing or permitting scheme granting government officials unbridled discretion constitutes a prior restraint and violates the First Amendment.  <u>Moreno Valley</u>, 103 F.3d at 819.

In <u>Moreno Valley</u>, this Court invalidated an ordinance which contained no limits on the authority of city official to deny a permit based on an evaluation of the community's "health, welfare, or aesthetic quality."  <u>Id</u>.  The Court further explained that the ordinance permitted the Moreno Valley officials to:

> deny a permit without offering any evidence to support the conclusion that a particular structure or sign is detrimental to the community

<u>Id</u>.  Here, Richmond's requirement for mandatory Design Review contains precisely the same unconstitutional discretion to the City official.  The Richmond official is provided no standards to cabin his/her discretion as to

25

whether any particular sign will be "detrimental to the public health, safety and welfare." As in <u>Moreno Valley</u>, the purported directions to City officials lack the objective criteria necessary to be consistent with the First Amendment.

As in <u>Moreno Valley</u>, where this Court concluded that the "permit requirement [was] unconstitutional", the District Court erred by dismissing Herson's Complaint without first considering the challenges to the Design Review requirements of the RMC.

> ### 1. *The Design Review Criteria Is Also Constitutionally Defective Because It Permits City Officials To Unconstitutionally Delay Permitting Of Signs.*

The District Court erred by granting the City's Motion to Dismiss regarding Herson's challenges to the unconstitutionality of the time limits applicable to the City's sign permit application process. (Order on Motion to Dismiss, p. 3, ER 92, Doc#61). The District Court erred by dismissing Herson's facial attack to a patently unconstitutional sign permitting scheme that failed to properly contain time limits for City officials in the review of sign permit applications.

The Supreme Court has held that a content based ordinance that lacks appropriate time limits for review is an unconstitutional prior restraint.

*See* FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223-224, 228 (1990)

(plaintiffs have standing to challenge a licensing scheme that does not

contain "specified and reasonable" time limitations for a government

official to make a decision about restricting speech). In Solantic, LLC v.

City of Neptune Beach, 410 F.3d 1250, 1269 (11th Cir.2005), the Eleventh

Circuit evaluated a sign ordinance without "any time period within which

the building official must" determine whether a sign permit application is

code compliant. (Id. at 1272.) The court held that

> [t]he absence of any decision making deadline
> effectively vests building officials with unbridled
> discretion to pick and choose which signs may be
> displayed by enabling them to pocket veto the
> permit applications for those bearing disfavored
> messages.

Id. The lack of any time restrictions in the ordinance rendered the law

unconstitutional: "[t]he sign code's permitting requirement is therefore

precisely the type of prior restraint on speech that the First Amendment

will not bear." (Id.)

Here, the City's Design Review Process, in addition to being subject to

a facial attack for unfettered discretion related to health safety and welfare,

has other failings related to time limits. As Herson alleged in the

Complaint, the City's permitting appeal process for design review is

27

likewise unconstitutional. (ER 1389, Doc#1). The Sign Code provides that upon a sign permit application, the Design Review Board's ("DRB") decision to deny an application shall become final ten days after the decision is rendered unless appealed to the City (RMC 15.04.930.120(B)). The procedures for appeals made to the City, however, by the text of the Sign Code section 15.04.980 apply only to "decisions made by the Planning Director or Planning Commission." (RMC 15.04.980.040). The time limits and other procedures established by this section are unclear and do not expressly apply to an appeal of a DRB ruling regarding denial of a sign permit; nor do time limits or other procedures applicable to an appeal of a DRB decision regarding a sign permit exist elsewhere in the Sign Code. The City, therefore, has seemingly unlimited time in which it can make a decision on an appeal from a DRB decision regarding a sign permit.

Moreover, the City has provided, in discovery, a "Design Review Application Brochure" in which the City explains that an Administrative Design Review takes "takes approximately 2-4 weeks plus any time spent on appeals. A Design Review takes approximately 8-12 weeks plus any time spent on appeals." (See Exhibit 33 to Herson Declaration in Support of Opposition to Motion For Summary Judgment, ER 753, Doc#113-10). This carries the potential for unfettered discretion and is subject to a facial

28

attack.  Accordingly, the District Court erred by concluding that Herson lacked standing to bring the claim because he did not suffer a delay at the hands of the City.  A facial challenge, like those made in <u>Solantic</u> and <u>FW/PBS, Inc</u>, are therefore appropriate methods of obtaining standing to challenge the lack of time limits.  The District Court should not have dismissed Herson's time limits challenge.

> **2.    *The Old Sign Code Did Not Require The City To Articulate Its Reasons For Denying Permits, And In This Instance The City Did Not Articulate The Height And Size Restrictions As A Basis For Denying Herson's Applications.***

The Old Sign Code did not require that City officials provide written explanations for the reasons for denying sign permit applications.  This failing renders the permitting scheme unconstitutional and subject to a facial attack as an unconstitutional prior restraint.  Herson alleged this as part of the First Claim.  (Complaint, ER 1396-97, Doc#1).  The District Court erroneously ignored this Claim.

The Supreme Court has explained that time, place, and manner regulations must "contain adequate standards to guide the official's decision and render it subject to effective judicial review.  <u>Thomas v. Chicago Park Dist</u>., 534 U.S. 316, 323, 122 S.Ct. 775, 780 (2002).  Thus, when a permitting scheme leaves the reasons for denial up to the "whim of

29

the administrator," the "First Amendment prohibits the vesting of such unbridled discretion in a government officials." Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 133, 112 S.Ct. 2395, 2403 (1992). "Regulations must contain narrow, objective, and definite standards to guide the licensing authority and must require the official to provide an explanation for his decision." Long Beach Area Peace Network v. City of Long Beach, 574 F.3d 1011, 1025 (9th Cir. 2009).

Such is the case here. There are no articulated standards in the RMC or in the City's established practice. The City's scheme violates a number of the Forsyth requirements. The City official: (a) is not required to rely on any objective factors; (b) need not provide any explanation for his/her decision, and (c) "Nothing in the law or its application prevents the official from encouraging some views and discouraging others." Id. As in Forsyth, the Sign Code gives the City official unfettered discretion to approve or deny a sign permit application without providing any explanations as to the reason for the denial. Herson's facial challenge on this basis should not have been dismissed and ignored by the District Court. To do so was error.

**D.   The District Court Erred By Dismissing Herson's Complaint Without Addressing Herson's Challenges To The RMC's Conditional Use Permit Requirement.**

The District Court dismissed, without leave to amend, Herson's claim

30

that the "Conditional Use Permit" section of the RMC violated his First Amendment Rights. (See Order on Motion For Judgment on the Pleadings, ER 095, Doc#48, p. 2:7-14). The District Court, in reviewing the First Amended Complaint, concluded that "plaintiff's complaint must be read to exclude any challenge premised on either the conditional use permit ("CUP") provisions set forth in section 15.04.910 of the municipal code." (ER 095, Doc#48, p. 2:7-8). The District Court then concluded that because the CUP provisions of Section 15.04.910 are part of the City "Zoning Ordinance", the CUP provisions "do not seek to regulate the process by which permission for sign placements is granted, and are not relevant to the newly enacted sign ordinance as such." (Id. at p. 2:11-13). This is error.

Herson has alleged, and Herson has previously argued to the District Court, that the CUP provisions are part of the overall process that the City relies on to permit speech through signage. First, Herson clearly pled in the Complaint the basis for the CUP allegation. Herson alleged that:

> The various steps in the [City's sign approval] procedures are fraught with vague standards, grant the permitting authorities unbridled discretion in evaluating sign permits, variances, and conditional use permits, and lack meaningful time limitations for approving and appealing permits. Chapter 9 15.04, attached as Exhibit 1, outlines the permitting

31

and conditional use procedures applicable to signs.

(Complaint, ER 1388, Doc#1, ¶16).  Herson further alleged that:

> the discretion granted to the Planning Commission
> in approving a conditional use permit is not
> cabined. The Planning Commission again considers
> the following discretionary criteria: the public
> health, safety, or welfare of persons residing in or
> working in or adjacent to the proposed project," and
> is given authority to impose conditions on the
> permit in order to protect these abstract values. As
> with the procedures for DRB approval of permits,
> the Sign Ordinance does not further define with
> objective criteria any of the purportedly limiting
> terms applicable to Planning Commission decisions
> on conditional use permits.

(ER 1389-90, at ¶22).  Herson then attached the CUP sections, and alleged

constitutional violations related to the CUP in the First Amended

Complaint (Doc#38, at ¶7) ("Attached as Exhibit 2 is a copy

of Section 15.04.910, Conditional Use Permits".)  The same allegations were

then presented in the Second Amended Complaint (ER1182-1183, ¶7) and

the Third Amended Complaint (ER 1060, Doc#63 ¶7), respectively.

To the extent the District Court's Order (ER 094-99, Doc#48)

dismissing Herson's claims as to the CUP was based on Herson's failure to

allege the claim, that dismissal was error.  This Court has explained that an

Order on Motion for Judgment on the Pleadings is appropriate only where

the moving party is entitled to judgment as a matter of law, even assuming

all material facts alleged in the pleading under attack are true.  Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998).  While the District Court may consider matters subject to judicial notice, United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003), the plaintiff is entitled to the benefit of any inferences drawn from the pleadings.  (Id.)  Clearly, Herson alleged that the CUP was an improper restriction on his right to speak.  Accordingly, the claim should not have been dismissed.

To the extent the District Court's Order (ER 094-98, Doc#48) dismissing Herson's claims as to the CUP was a determination of law, that determination was error. An approved conditional use permit may be used in lieu of a sign permit to be eligible to apply for a building permit.  RMC 15.04.910.010(B).

One of the conditions for approving a conditional use permit is the proposed sign's effect on public health, safety, and welfare and its compatibility with the surrounding neighborhood.  RMC 15.04.910.050(A). As with the procedures for design review board approval of sign permits, the Sign Code does not further define with objective criteria any of the purportedly limiting terms applicable to conditional use permits.  This fails constitutional requirements.

Accordingly, the District Court erred in concluding that Herson failed

33

to properly allege the unconstitutionality of the conditional use permit provisions, and the District Court further erred in concluding that the conditional use permit provisions are not "part of the process by which sign placement is granted" within the City.

Although Herson never subjected himself to the design review or the CUP standards, a party who is subject to a licensing statute allegedly vesting unbridled discretion in a government official as to whether to permit or deny expressive activity, may <u>facially challenge the statute without first applying for the license</u>.  See <u>City of Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 755-56 (1986).

**E.  <u>The District Court Erred In Concluding That The "Height and Size" Limitation On Speech Located Within The Richmond Parkway Restricted Zone Is Not A Content-Based Restriction And Is Therefore Constitutional; The City Had No Valid And Constitutional Basis For Denying Herson's Off-Site Non-Commercial Sign Permit Applications.</u>**

In the City's Motion for Summary Judgment, the City argued that Herson lacked standing to challenge the denials of the permit applications because the applications failed to comply with the specified "height and size" requirements of the Old Sign Code.  (See Order Granting in Part and Denying in Part the City's Motion for Summary Judgment, ER 080, Doc#137, p. 9:17-23).  Put differently, the City contends that Herson lacked

standing to challenge provisions of a sign ordinance where Herson's proposed signs could have been rejected on the basis of height and size. (Doc#88, p. 16).  Accordingly, as the City argues, if there had been a constitutional basis for denial, then Herson's claims are not redressible, and Herson lacks standing.  (Id.)

Each time the District Court was faced with this question, it properly rejected the argument, explaining that the City expressly identified a separate basis for the denial of Herson's permits, to wit: that the signs were "not allowed per Section 15.06.080(c) of the Richmond Sign Ordinance." (ER 081, Doc#137, p. 10, citing Exhibit 6 to Herson's Third Amended Complaint, ER 1146-1155, Doc#63-2, pp. 36-45).  As the District Court explained, because the City had not provided any other evidence suggesting an otherwise valid reason for the permit denial, "only sections of the code upon which the City actually relied in denying Plaintiffs' permit applications" are relevant.  (ER082, Doc#88, p. 16, citing Herson v. City of San Carlos, 714 F. Supp.2d 1018, 1024 (N.D. Cal. 2010)).  The City then contended that because the "height and size" requirement of the Old Sign Code (§15.06.080(C)(6)(g)(ii)) was a constitutionally valid reason for denial, Herson's claims for damages lack standing.  The District Court noted that Herson had properly alleged standing by challenging the

35

constitutionality of the "height and size" requirements, and because the
parties had not provided briefing on the actual question of whether the
"height and size" requirement was unconstitutional, the Court denied the
City's Motion with respect to Herson's damages claims as to the Old Sign
Code. (ER 082, Doc#137, p. 11).

However, the District Court then explained that if a determination
were made about the constitutionality of the "height and size" requirement,
then the question as to whether the City *would* have an independently valid
basis for denying the permit applications, could be made, and the standing
issue finally resolved. (ER 083, at 12). Accordingly, the District Court
permitted additional briefs on the issue of the constitutionality of the
"height and size" requirement.

After briefing, the Court entered Summary Judgment, finding that the
Old Sign Code's "height and size" requirements for Type B freestanding
signs were content neutral and constitutional. The Court then followed its
conclusion that because Herson's proposed signs exceeded the Type B
height and size limitation, the City could have denied the permit
applications on that basis, and Herson's claims lacked standing for failure
of redressibility. (Order Granting Motion for Summary Judgment, ER 041,
Doc#190, p. 7). This was error.

36

### 1.   *The RMC's Height And Size Restrictions Are Clearly Content-Based.*

The District Court did not give any significance to the fact that the Old Sign Code regulates freeway facing signs <u>based solely on content</u>.  Under Old Sign Code 15.06.080(c)(5):

> All signs, except for Major Gateway Area Identification Signs   and development signs, which are within 660 of a freeway route shall be placed in such a manner as to be oriented to the local street system.

As the ordinance explains, under this scheme, only those "Major Gateway Area Identification Signs   " and "development signs" may be oriented to the freeway in the Richmond Parkway Restricted Zone.  The Old Sign Code provides that "Major Gateway Area Identification Signs   " and "development signs" as signs "Classified By Content."  This dooms the Ordinance.

Pursuant to Old Sign Code 15.05.050(1)(h), a Major Gateway Area Identification Sign is a sign in which "the wordage of these signs would include no advertising, only the name of the center."  This definition permits some commercial speech but plainly prohibits other types of commercial speech.  More importantly, this content-based definition

37

provides <u>no permission for non-commercial speech anyplace where the commercial speech permitted</u>.

The District Court noted that the City has conceded that the for freeway facing signs, the review is not based on the physical structure upon which the sign is placed, but instead is based solely on content! (See Order on Summary Judgment, p. 5:24-27; ER 039, Doc#190).

Put differently, in order for a City official to determine whether a freeway facing sign under Old Sign Code 15.06.080(C)(5) is permissible, the City official must first look to the content of the sign.  Only if the sign contains wordage which "would include no advertising, only the name of the center" can the sign be permitted to be oriented to the freeway.  All other signs, or content, were plainly prohibited.

This is constitutionally problematic for two reasons.  First, the content-based distinctions of the  Major Gateway Area Identification Sign permits commercial speech but prohibits Herson's non-commercial speech.  Second, the Major Gateway Area Identification Sign is afforded – based on its content – special height and size requirements that other, content neutral signs are not afforded.  This violates the First Amendment; see <u>Moreno Valley</u>, 103 F.3d at 819.  See <u>City of Ladue v. Galeo US</u>, 512 U.S. 43 (1994) compare Old Sign Code § 15.06.080(C), with § 15.06.080(C)(8).

38

(Doc. 63-2, Ex. 5, ER 1111-1114.)  The Old Sign Code made clear that the height and size restrictions only applied to freestanding signs "provided" they satisfied content-based restrictions.  Old Sign Code § 15.06.080(C).1. For freeway oriented signs that contained prohibited content, such as signs bearing political speech, there were no stated available height and size restrictions under the Old Sign Code.

Under the Old Sign Code, Major Gateway Area Identification Signs[3] were limited in height to "Forty-five feet maximum or as determines [sic] by the DRO [Design Review Board]", and an area of "One hundred feet per sign face."  However, the Old Sign Code did not provide a limit to the number of sign faces existing on one sign.  Accordingly, the potential height of such a sign was unlimited, and square footage for a sign could literally be thousands of square feet, and approved to face the freeway, solely based on content.  See Old Sign Code 15.06.080(h)(i).

The District Court was provided, in briefing on the Motion for Summary Judgment, evidence proving that the City has approved freeway facing signs well in excess of the forty-five foot limit, and which contain

---

3 Old Sign Code §15.06.050(1)(h): Major Gateway Area Identification Sign: means a sign located outside the edge of a freeway right-of-way or at the base of a freeway off-ramp announcing the location of a major city centers. The wordage of these signs would include no advertising, only the name of the center.

several thousand square feet of commercial speech signage.  (See Declaration of Jeffrey Herson In Support of Opposition to Motion for Summary Judgment, Exhibit 9, ER 422, Doc#111-10).  Further evidencing the content based preference of the City, the Design Review Board permitted only certain speech, "In no case shall the wording of signs describe prices, or any type of advertising except as part of the occupant's trade name or insignia," while proscribing other speech, forbidding "color, lettering or design . . . which make use of the words, 'STOP', 'LOOK', 'DANGER';"  (See Declaration of Jeffrey Herson In Support of Opposition to Motion for Summary Judgment, Exhibit 9, ER 431, Doc#111-10).

Meanwhile, however, while a Major Gateway Area Identification Sign may be permitted to display commercial speech with thousands of square feet of signage toward the freeway, the Old Sign Code provided for ZERO square feet of political or other types of non-commercial speech to be visible from the freeway.  <u>The Old Sign Code expressly prohibited political speech when oriented to the freeway</u>.  (See RMC § 15.06.080(3)) (political signs permitted "provided the copy is not visible from [freeway] right of way.)  There can be no more oppressive and unconstitutional provision under Ninth Circuit jurisprudence which actually proscribes political speech where expressly permitting commercial speech.

40

Thus, because political speech was not permitted for freeway facing signs, and there was no applicable height and size with which political speech could be displayed, any other height and size restriction for freeway facing signs must be struck down.  See <u>Ladue</u>, 512 U.S. at 54-55.

Accordingly,  the next inquiry is to determine whether the ordinance is the least restrictive means available to further the City's interest.  That effort fails here, as there can be no furtherance of the City's stated purpose for regulating signs – "to protect and promote the health, safety, and welfare of the citizens" and "improving the visual appearance of streets in the image of the City" (RMC 15.06.020A) – by permitting commercial speech oriented toward the freeway (at 80+ feet high and 27 feet wide), whilst simultaneously banning all political speech oriented toward the freeway.

> ## 2. *Herson's Applications For Sign Permits Did Not State Any Height And Size; The City Plainly Denied The Permits Based On Content, Not Height and Size.*

The District Court erred when it found that the City had a permissible reason for denying Herson's sign permit applications.  Further, the District Court erred by even considering the "height and size" excuse for denial,

41

because the City has never provided height and size as a reason for the denial. This should end the inquiry.

Even if the District Court properly examined other reasons for the denial upon which the City MIGHT have relied, the City could not have relied on a height and size restriction for denial, because the City never examined a proposed height and size on the permit applications at the time of denial. (Deposition Transcript of Ruby Benjamin, p. 33, ER 1036, Doc#90-8). Indeed, the City did not even examine the details of the applications before denying them, because, as the City official testified:

> I stamped [the applications] and I put "not permitted" -- I
> think "not permitted in freeway proximity," something to
> that effect.

Id. at ER 1035. Thus, the contention by the City that it denied Herson's sign permit applications on the basis of height and size is patently false. The City immediately noted that the sign permits could not be approved because of the ban on freeway facing signs (Old Sign Code 15.06.080), and denied them without further review.

Moreover, as Herson explained to the District Court on briefing for summary judgment, "Plaintiffs would have accepted the largest size sign permitted under the Old Code in the locations in question." (See Declaration of Jeffrey Herson In Support of Opposition to Motion for

42

Summary Judgment, ER 329, Doc#111). Accordingly, when Herson applied for the sign permits, he did not provide the City with the Height and Size of his proposed signs. Id. The structural plans were never stamped. (Ruby Benjamin, p. 33, ER 1038, Doc#90-8). Thus, at the very least, a material dispute of fact exists as to whether the City can even claim that it could have denied the sign permit applications on height and size, particularly when the permits were denied without review by the City.

### 3. *The District Court Improperly Ignored The Unconstitutional Portions of The Height And Size Provisions*.

The District Court explained that "even in the face of unconstitutional content based provisions of the sign ordinance" the City still had the ability to deny the sign permits if any provision of the RMC was constitutional. (Order, ER 40, Doc#190). This was error.

The District Court appeared to recognize that portions of the prior Code contained unconstitutional content, but ignored them as being irrelevant to Herson. Id. When the City failed to defend the constitutionality of the Old Sign Code, the District Court, in effect, severed the height and size standards from the Old Sign Code, finding that the only relevant provision of the Old Sign Code – as far as it related to Herson – was the height and size restriction. This was an improper functional

43

"severance" of the unconstitutional provisions of the code, turning a blind eye to those provisions as "irrelevant," notwithstanding the other clear content-based restrictions contained in the Old Sign Code.  This was error.

**F.    The Sign Code's Exemptions Render The Permitting Scheme Unconstitutional; The District Court Erred By Dismissing This Claim On The Basis Of Standing.**

The District Court dismissed Herson's facial attack to the Sign Code's "exemptions" on the basis of standing, essentially concluding that because the City had a constitutional basis for denial of Herson's sign permit applications (height and size), Herson had no standing to make his facial challenges to the Sign Code at large.  (ER 081, Doc#137).   This was error because it failed to consider the independent basis for standing based on the facial attacks to the entire permitting scheme.

The Old Sign Code, 506.06.060, entirely exempted five types of signs from the city's permitting requirements.  This Court has repeatedly held that such exemptions render sign permitting schemes unconstitutional. See Moreno Valley, 103 Fd 814 (9th Cir. 1996), National Outdoor Advertising v. City of Orange, 861 F.2d 246 (9th Cir. 1988), and  Foti v. City of Menlo Park, 146 F.3d 629,636 (9th Cir. 1998).  In those cases, exemptions from the sign codes were deemed unconstitutional because the exemptions required the city officials to examine the content of the

44

proposed sign to determine whether the exemptions in the code applied. Such is the case here.

The five types of off-site signs that were exempted from the Old sign Code included:

> **A. OFFICIAL NOTICES**. Official public notices, and notices posted by public officers in performance of their duties.

> **B. REGULATORY AND WARNING SIGNS**. Governmental and other signs for control of traffic and other regulatory purposes, including street signs, danger signs, railroad crossing signs, and signs of public service companies indicating danger or aids to service or safety. including signs showing the placement or location or underground public utility facilities and any sign necessary to identify the location of public telephones.

> **C. TEMPORARY DISPLAY POSTERS**. Temporary display posters, without independent structural support, in connection with civic and noncommercial health, safety and welfare campaigns, provided that such posters shall be removed within 10 days after the conclusion of the campaign.

> **D. FLAGS AND EMBLEMS**. Flags, emblems, insignias and posters of any nation, state, international organization, political subdivision or other governmental agency; unilluminated, nonverbal religious symbols attached to a building which is a place of religious worship; and temporary

45

displays of patriotic, religious, charitable or civic character.

**E. HISTORIC SIGNS**. Commemorative signs, symbols, memorial plaques and historical tablets, placed by historical societies.

Old Sign Code 15.06.060.

The District Court erred in dismissing Herson's claims related to the exemptions in light of the fact that the Old Sign Code contained content-based restrictions of speech, in violation of the First Amendment. "Whether a statute is content neutral or content based is something that can be determined on the face of it." And if a statute "describes speech by its content then it is content based." Center for Fair Public Policy v. Maricopa County, 336 F.3d 1153, 1164 (9th Cir. 2003). In order to determine whether a regulation is content-based, the "principal inquiry is whether the government has adopted a regulation of speech without reference to the content of the regulated speech." Foti, 146 F.3d at 636. Where city officials must "examine the content" of signs to determine whether an exemption applies, the regulation is content-based. Moreno Valley, 103 F.3d at 820.

As is the case here, when '"exceptions to the restriction on noncommercial speech are based on content, then restriction itself is based

46

on content.'"  <u>Foti</u>, 146 F.3d at 636.  In <u>Foti</u>, Menlo Park's sign ordinance

exempted, among other things

> Safety, traffic, or other public informational signals,
> signs, banners or notices erected or maintained by a
> public officer or employee in performance of a
> public duty . . . for public safety, peace and welfare.

(<u>Id</u>. at 634 n.3.) This Court held that Menlo Park's exemptions for safety,

traffic, and public informational signs "are content-based because a law

enforcement officer must read a sign's message to determine if the sign is

exempted from the ordinance."  (<u>Id</u>. at 636.)  This Court rejected the notion

that any perceived innocuousness of the exemptions was relevant to the

question of whether they made the statute content-based.  This Court

explained that

> Although Menlo Park's exemptions . . . seem
> innocuous, we base our content-based
> determination on whether the ordinance singles out
> certain speech for differential treatment based on
> the idea expressed. The reasonableness,
> harmlessness or worthiness of the idea is irrelevant.

(<u>Id</u>. at 636).  In <u>Moreno Valley</u>, 103 F.3d at 820, the sign ordinance

contained similar exemptions.  This Court determined that such

exemptions were content-based:

> because the exemptions require City officials to
> examine the content of noncommercial offsite
> structures and signs to determine whether the

47

exemption applies, the City's regulation of
noncommercial speech is content-based.

Id; see also Outdoor Media Group v. City of Beaumont, 506 F.3d 895, 906-

907 (9th Cir. 2007) (repealed sign ordinance was "content-based" because

it exempted among other things, "certain directional and informational

signs" from "the permit requirement").

In the cases cited above, this Court found that the exemptions placed

too high a burden on noncommercial speech, which invalidated the

permitting schemes.  Here, the Old Sign Code suffers from the same failings

as those in the cases cited above, and the result should be the same.

### 1.    *The New Sign Code's Exemptions Are Similarly Unconstitutional*

In response to the Herson Complaint, the City amended its Sign Code

to revise the five enumerated exemptions, and replaced them with two new

exemptions.  Even after the amendment, the exemptions render the scheme

unconstitutional.  The first amendment of the New Sign Code provided

exemptions from the permitting scheme for:

(1) Official notices posted by public officers in
performance of their duties and

(2) Governmental and other signs for control
of traffic and other regulatory purposes, including
street signs, danger signs, railroad crossing signs,
and signs of public service companies indicating

48

> danger or aids to service or safety, including signs
> showing the placement or location of underground
> public utility facilities.

(See Exhibit 7 to the Third Amended Complaint, ER 1164, Doc# 63-2, p.54).

Sometime shortly after a hearing in the District Court, the City again amended the exemptions, eliminating the unconstitutional content-based exemptions for government signs with "other regulatory purposes," and added the exemption for "Traffic control and danger signs erected for a governmental entity." (New Sign Code 15.06.070).

The Old Sign Code exemptions are clearly unconstitutional and content based. It appeared the City conceded as much. However, the New Sign Code fares little better. Like the exemptions in <u>Foti</u> and <u>Moreno Valley</u> the new exemptions are content based because the City has failed to define the bounds of these exemptions. For example the City could post an "official" sign that states "Support The Mayor's Agenda" or "Vote For Mayor Smith," while Herson could not post a sign opposing the mayor, in support of his candidate of choice.

Although the exemption for traffic control and danger signs erected by a government entity appear to be less innocuous, they still may be problematic. For example, the City could erect a sign that says "Danger, Stop abortion." Because of the way the exemptions are defined – or not

49

defined, as is the case here – the City's exemptions allow it to control one side of a debate.  As this court stated in <u>Foti</u>, "we are troubled by the wholesale exemption for government speech."  <u>Foti</u>, 146 F.3d at 637.

    a.    <u>The New Sign Code Unconstitutionally Exempts "Realty Signs."</u>

In the Old Sign Code, Section 4.04.040(I) (Exhibit 1 to the Third Amended Complaint, ER 1074, Doc.63-1, p. 3), the City explained that it exempted "realty signs" from the Uniform Sign Code Section 303.[4]  The Code then explains that "realty signs" are to be exempt along with those contained in Chapter 15 of the Municipal Code.  (Id.)  Chapter 15 of the Old Sign Code provided the five exemptions (as discussed above), but also provided maximum quantities and height and size requirements for "realty signs."  (See Old Sign Code 15.06.070(A)(1)(o)) (ER 1119).  When the City amended the Old Sign Code, the City removed any reference in Chapter 15 to "realty signs."  (ER 1156 et. seq)  However, the realty exemption from 4.04.040 (ER 1074) still remains.  Accordingly, the New Sign Code now exempts "realty signs" but without any limitations on height, size, or quantity per parcel.  This undefined and unregulated "realty" exemption renders the permitting scheme unconstitutional and subject to facial attack.

_____

    4Herson is unclear what the reference to Uniform Sign Code Section 303 refers to.

Once again, the exemptions permit real estate speakers to post signs, but forbid all off-site non-commercial signs. This violates the principles pronounced in Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 516, 101 S.Ct. 2882 (1981).

Exempting real-estate signs from the general ban also results in the favoring commercial speech over other commercial speech, in violation of the principles stated in Central Hudson Gas & Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). This court stated in Ballen v City of Redmond, 466 F.3d 736, 743-44 (9th Cir. 2006), that wholesale exemption for certain types of signs "compromise[s] the city's interest." Such is the case here. The District Court erred by dismissing Herson's Complaint in lieu of the facial attack to the exemptions contained in the City's Old Sign Code and New Sign Code that establish a preference for commercial speech over non-commercial speech in violation of Herson's constitutional rights.

### G. The District Court Erred In Dismissing Herson's Claims Related To The New Sign Code, And In Refusing To Delve Into The Constitutionality Of The Provisions Of The New Sign Code.

In response to the City's Motion for Summary Judgment, the District Court concluded that Herson had not properly alleged claims related to the

51

New Sign Code, with one exception.  (ER 84, Doc#137 p.13).  The District

Court recognized that Herson had specifically alleged the

unconstitutionality of New Sign Code §15.06.070(A)(ii), related to signs

that are exempt from the New Sign Code permitting requirements.  (See,

Third Amended Complaint, ER 1066, Doc#63, ¶33).  The District Court,

believing – incorrectly – that Herson had not made any additional

challenges to the New Sign Code, explained that it "declines Plaintiffs'

invitation to delve into the constitutionality of . . . additional provisions."

(ER 80, Doc.#137, p. 9:23).  The Court erred in failing to acknowledge that

Herson had properly alleged claims related to various other provisions of

the New Sign Code.

For example, paragraph 7 of the Third Amended Complaint

referenced and attached as exhibits, the following RMC Sections:

> Attached as Exhibit 1 is a copy of Chapter 4.04 . . .
> Attached as Exhibit 2 is a copy of Section 15.04.910,
> Conditional Use Permits. Attached as Exhibit 3 is a
> copy of Section 15.04.930, Design Review. Attached
> as Exhibit 4 is a copy of Section 15.04.980, Appeals.
> Attached as Exhibit 5 is a copy of Chapter 15.06 of
> the OLD CODE. Chapter 15.06 is entitled the Use
> and Display of Signs.

(See, Third Amended Complaint, ER 1060, Doc#63, ¶7).  Then, with respect

to the claims for relief thereafter, Herson alleges that those sections of the

RMC violate his constitutional rights, which resulted in damage.

Accordingly, Herson has alleged:

> 20.  Plaintiffs reallege Paragraphs 1 through 19, above.
>
> 21. RICHMOND'S regulation of signs as of June 26, 2009, within its 660 FOOT RESTRICTED AREA facially violated the First and Fourteenth Amendments to the United States Constitution by containing content-based restrictions that give greater protection to commercial speech than noncommercial speech, and by regulating noncommercial speech based upon content.
>
> 22.  Accordingly, RICHMOND'S denial of the sign applications on or about June 26, 2009, violated Plaintiffs' First Amendment rights.

(Id.)   Clearly, Herson placed the City on Notice that Sections 4.04,

15.04.910, 15.04.930, 15.04.980 15.06, and 15.06 were alleged to be

unconstitutional.  Moreover, Herson argued, in response to the City's

Motion for Summary Judgment, that those sections of the Sign Code (both

new and old)[5] were unconstitutional, and part of Herson's case in chief.

---

     5 Neither Chapter 4.04 nor Chapter 15.04 were ever amended.  As such,  Chapters 4.04 and Chapter 15.04 both remain part of the Old Sign Code, and the New Sign Code as referenced in this Brief.

Accordingly, the District Court erred in determining – by way of summary judgment – that Herson had alleged only Section 15.06.070(A)(ii) of the New Sign Code.  Herson put the City on Notice that he was challenging several sections of the New Code, and Herson presented the basis for such challenges in response to the City's Motion for Summary Judgment.  The District Court erred in refusing to consider those arguments.

Moreover, as shown above, it is not a plaintiff's burden to state which provisions are in issue.  A plaintiff merely has to show that he or she was denied the right to speak by the government.  The government must then prove that its regulatory scheme is constitutional.  See Lim, 217 F.3d 1050.

### H.    Issues Of Fact Remain On Equal Protection.

The District Court erred in concluding that Herson had failed to establish a genuine issue of material fact with respect to Herson's equal protection claim.  (Order, p. 18, ER 88-89, Doc#137).  The Court erred because (a) the City failed to raise a proper challenge to Herson's Equal Protection Claim, and, as a result, the burden was never shifted to Herson to provide evidence under Fed. R. Civ. P. 56 , and (b) the Court erred in granting summary judgment as material issues of fact existed as to the claim.

54

### 1.  The City Never Properly Challenged the "Class of One" Claim Brought By Herson; As Such, Herson Carried No Burden To Produce Facts In Support of the Claim.

The basis for Herson's Equal Protection claim is founded in the fact that, among other things, City Councilman Nate Bates approved a building permit for a sign that was not allowed under the RMC.  In discovery, Herson uncovered evidence suggesting that the sign was approved under questionable circumstances due to relationships Councilman Bates had with the sign owner, which included contributions to the Councilman's campaign.  (Deposition Excerpt of Lori Reese-Brown, p. 134, ER 851, Doc#110).  The City filed a Motion for Summary Judgment challenging Herson's claim on the basis of Monell v. Department of Social Services, 436 U.S. 658 (1978) ("Plaintiffs have not shown that the alleged discrimination was the result of a City policy or custom as opposed to an isolated action of a ministerial City employee, and thus, under favored speaker that otherwise would have been disallowed.") (Motion for Summary Judgment, p. 9:11-14, Doc#88).

The District Court did not even consider the City's Monell challenge, as the Court recognized, correctly, that this was not a Monell liability issue, but was instead an issue based on the Village of Willowbrook v. Olech, 528

U.S. 562, 564, 120 S.Ct. 1073, 1074 (2000), "class of one" claim for equal protection.  Because the City's only challenge to Herson's equal protection claim was based on <u>Monell</u>, Herson was not required to produce evidence in support of a <u>Monell</u> claim.  <u>Accordingly, summary judgment cannot be properly entered when the movant's challenge is initially mistaken or misplaced as to the non-movant's claim.</u>

Under Fed. R. Civ. P. 56, the movant is required to identify the claim on which the movant believes no issue of material fact exists.  The Supreme Court has explained that the

> party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Where, as here, Herson carries the burden of proof at trial on the equal protection claim, the non-movant must identify the challenge to each claim. Here, the City argued that Herson had no facts to support a Citywide policy or practice of discrimination.  The City did not contend that Herson lacked factual support on the "class of one claim."  The burden never shifted.

56

However, the City failed to recognize, and failed to contend in its moving papers, that Herson's "class of one" claim failed to raise triable issues of fact.  This failure, on the City's part, does not shift the burden to Herson to provide admissible evidence establishing a genuine issue of material fact on the "class of one claim."  Thus, because the City never properly raised the issue, and the burden was never shifted to Herson, the Court improperly entered summary judgment on the "class of one" claim.

## 2.  *Herson's "Class of One" Claim Raised Genuine Issues of Material Fact.*

The Supreme Court has recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Olech</u>, 528 U.S. at 564.

Here, the District Court recognized that Herson has alleged a "class of one" equal protection claim, where he alone was (1) intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment.  To succeed on a "class of one" claim, Herson must demonstrate a triable issue of fact related to the City having intentionally treated Herson differently than other similarly situated

57

property owners, without a rational basis.  Id.  The District Court

acknowledged that Herson may have been treated differently from others

similarly situated, but concluded that Herson presented no evidence:

> that he approached a City councilman in order to
> request approval of their signs and been rejected.
> Without such evidence, plaintiffs cannot
> demonstrate that the City intentionally treated
> plaintiffs differently than other similarly situated
> owners at all.

(Order Granting Summary Judgment in Part, ER 089, Doc#137, p. 18).

This was error.  The evidence offered, when reviewed in a light most

favorable to the non-movant, establishes a dispute of material fact related

to the disparate treatment Herson received at the hands of the City.

For example, Terry Kwon, the owner of the Pacific East Mall, was

originally denied a billboard sign by the City planning department.  Shortly

thereafter, Kwon called City Councilman Nathaniel Bates at home, and they

then met at Kwon's property.  (Bates Depo. Trans., ER 833-834).  Bates and

Kwon had lunch together -Kwon paid for it -and later Kwon bought lunch

for Bates and the City's top planner, Lori Reese-Brown.  (ER 836).

Councilman Bates testified that, at this meeting, he told Mr. Kwon that he

would see what he could do about getting Kwon's previously rejected sign

approved.  (ER 837).

In his deposition, City Councilman Bates testified as follows:

> Q:     Okay, so now he has explained to you what he wants to do.  What's your response?
>
> A:     Well, I said I'll talk to staff, and I'll see if it's permissible, **if they can work it into being approved**.

 (ER 837).

City Planner Reese-Brown testified that Pacific East Mall received "special conditions" which exempted it from "every section" of the Old Code (ER 852:14-853:15).  Reese-Brown also testified that during a meeting, Terry Kwon  explained that he had made campaign contributions to officials of the City.  In her deposition, City planner Reese-Brown testified as follows:

> Q.     What did they say specifically about their contributions to the council member's?
>
> A.     They were talking about how long they have had the Pacific East Mall.  Terry Kwon mentioned how long he had that and when it was built, and that he contributed to all their campaigns.

(Terry Jack Long Depo (ER 851:2-7).

On or about January 13, 2009, (ER 790-798), the City issued a new building permit to Ad Art Sign Company, for the installation of the new Pacific East Mall freeway LED billboard.   This permit was issued, even

59

though such as sign was not permitted under RMC 16.06.080(C)(8), which prohibited the erection of new off-site advertising signs within the Richmond Parkway Restricted Zone.  This sign is located approximately 80 feet from the freeway right of way. (ER 332, ¶ 11).

Other examples include the City's improper approval of a church sign. On February 13, 2009,  the City  approved an LED (Electronic Message sign) for El Portal Church of Christ, (ER 732, Doc#113-9, p. 7) in  violation of RMC 15.04.930.  The required Design Review, as explained above, was ignored by the City – specifically Planner Ruby Benjamin – when the sign was approved.  ER 730.

All of this evidence, along with hundreds of pages of other examples, was presented to the District Court, and was never controverted by the City. This evidence shows that the City approved signs for favored speakers – due to relationships with Citycouncilmen – which it similarly denied to Herson.  The Court refused to evaluate the evidence presented in light most favorable to Herson.  The evidence presented to the District Court shows that City officials exercised "unfettered discretion," which, as in a prior case involving the City, "grants officials the power to discriminate and raises the specter of selective enforcement on the basis of the content of speech." N.A.A.C.P. v.City of Richmond, 743 F.2d 1346 (9th Cir. 1984).

When, as here, an approval process is "completely discretionary," "there is a danger that protected speech will be suppressed impermissibly because of the government official's...distaste for the content of the speech." <u>Young v. City of Simi Valley</u>, 216 F.3d 807, 819 (9th Cir. 2000). The Supreme court held in <u>Thomas v Chicago Park</u>, 534 U.S. 316, 325, 122 S.Ct. 775 (2002) that:

> Granting waiver to favored speakers ( or, more precisely, denying them to disfavored speakers) Would of course be unconstitutional, but we think this abuse must be dealt with if and when it appears.

The unfettered discretion shown by the City under its RMC, and as-applied by the City officials, establishes an equal protection violation, or at the very least a triable issue as to the claim. (See Herson Decl., 11-47 and Exs. 1-33, ER 328-801). The District Court erred by granting summary judgment on Herson's equal protection claim.

## I.     <u>The District Court Erred By Dismissing Herson's Claims for Injunctive Relief.</u>

The District Court erroneously concluded that injunctive relief was not available because the Old Sign Code under which Herson's sign applications were denied was later repealed by the City. This was error.

Herson's Complaint seeks an order enjoining the City from requiring sign permits in order for Herson to be eligible to apply for building permits.

61

The City relied upon an unconstitutional scheme to deny Herson's application for sign permits (See above).  The District Court concluded that injunctive relief is not appropriate because Herson seeks *prospective* relief that was mooted by amendment of the RMC.  This is error.

At the time Herson filed the Complaint, he sought permission to display his speech.  An unconstitutional permitting scheme prevented him from doing so (or at least chilled his desire to display the speech in knowing violation of the ordinance) by requiring a permit to display the speech.  The unconstitutional permit requirement is an *existing and current* roadblock to Herson's right to display his speech.  Herson's injunctive claim seeks removal of that roadblock, which would permit him to display his speech.  Put differently, if the City were enjoined from enforcing its unconstitutional permit requirement, Herson would immediately be able to display his speech.  This is not prospective or hypothetical relief.  The District Court erred because it failed to understand the nature of the injunctive relief requested, and dismissal of Herson's injunctive relief claim was error.

### J.    The District Court Abused Its Discretion In Entering An Order Of Sanctions Against Herson.

Lastly, the District Court erred in entering an award of sanctions in favor of the City, and against Herson, for alleged spoliation of electronic

62

data.  The District Court abused its discretion in awarding sanctions, and abused its discretion in awarding $15,000.  (ER 054-62, Doc#170).

The District Court's sanction was unreasonable in light of the facts. The City did not prove that Herson intentionally deleted files in an effort to frustrate discovery.  Instead, the files were deleted when the computer faced a virus that required re-installation of the operating system.  That is uncontroverted.

Moreover, the City was already in possession of the paper copies of the drawings that it hoped to obtain in Herson's computer.  The City does not genuinely contend that it was unable to obtain necessary litigation discovery.  Rather, the City was on a fishing expedition and wanted Herson to pay for it.  The amount of the sanction was unwarranted and unreasonable.

Considering the excessive amount of the sanction, and the fact that the District Court found that Herson did not act in bad faith, it is clear that the City's Motion for Sanctions was an attempt to dissuade plaintiffs like Herson from exercising their rights to petition their governments for relief from unconstitutional restrictions of speech.  The City, in amending the RMC, essentially conceded the unconstitutionality of the Sign Code. Nevertheless,  the City continued to deny any liability for Herson's damage

63

claims, and instead, filed a bad faith discovery motion in an attempt to use the process to chill Herson's rights to petition – through litigation – his grievances.  In light of the totality of the circumstances, the Motion for Sanctions is a thinly veiled intimidation effort to convince Herson to stop suing cities for First Amendment rights.  No sanction was warranted.

## CONCLUSION

As set forth above, the District Court erred by dismissing Herson's Complaint.  Herson seeks reversal and remand of the Judgment, with instructions to the District Court to proceed with Herson's claims for damages and injunctive relief on the merits.

DATED:    This 12th day of April, 2012.

ROBISON, BELAUSTEGUI, SHARP & LOW
A Professional Corporation
71 Washington Street
Reno, Nevada 89503

/s/ Frank C. Gilmore
FRANK C. GILMORE - NV Bar # 10052
Attorneys for Plaintiffs-Appellants -
Jeffrey Herson and East Bay Outdoors, Inc.

64

## <u>STATEMENT OF RELATED CASES</u>

Plaintiffs/Appellants know of no other case pending in this Court that

is deemed related.

DATED:     This 12th day of April, 2012.

ROBISON, BELAUSTEGUI, SHARP & LOW
A Professional Corporation
71 Washington Street
Reno, Nevada 89503

 /s/ Frank C. Gilmore
FRANK C. GILMORE - NV Bar # 10052
Attorneys for Plaintiffs-Appellants -
Jeffrey Herson and East Bay Outdoors, Inc.

65

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT RULE 32-1</u>

### U.S. Court of Appeal Docket: No. 11-18028

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and the Ninth Circuit Rules 32-1, the attached Appellants' Opening Brief is proportionately spaced with a typeface of 14 points or more, in Georgia font, generated in the WordPerfect X3 word processing software and contains approximately 13,750 words.

DATED:     This 12th day of April, 2012.

ROBISON, BELAUSTEGUI, SHARP & LOW
A Professional Corporation
71 Washington Street
Reno, Nevada 89503

/s/ Frank C. Gilmore
FRANK C. GILMORE - NV Bar # 10052
Attorneys for Plaintiffs-Appellants -
Jeffrey Herson and East Bay Outdoors, Inc.

66

## <u>CERTIFICATE OF SERVICE</u>

### U.S. Court of Appeal Docket:
### No. 11-18028

I hereby certify that I am an employee of Robison, Belaustegui, Sharp & Low and that on this date I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

DATED:     This 12TH day of April, 2012

/s/ Mary Carroll Davis
MARY CARROLL DAVIS

67