Docket No. 11-18028

## UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

JEFFREY HERSON and EAST BAY OUTDOOR, INC.,
Plaintiffs and Appellants,

v.

CITY OF RICHMOND,
Defendant and Appellee.

---

Appeal from the United States District Court
For the Northern District of California
Case No. 4:09-cv-02516

---

## APPELLEE'S BRIEF

---

MATTHEW D. ZINN
(CA Bar No. 214587)
WINTER KING
(CA Bar No. 237958)
JACLYN H. PRANGE
(CA Bar No. 270929)
Shute, Mihaly & Weinberger LLP
396 Hayes Street
San Francisco, CA 94102
Telephone: (415) 552-7272
Facsimile: (415) 552-5816

BRUCE REED GOODMILLER
(CA Bar No. 121491)
City Attorney
SHANNON L. MOORE
(CA Bar No. 243634)
Assistant City Attorney
City of Richmond
450 Civic Center Plaza
Richmond, CA 94804
Telephone: (510) 620-6509
Facsimile: (510) 620-6518

*Attorneys for Defendant and Appellee*
*City of Richmond*

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ............................................... 1

STATEMENT OF THE ISSUES..................................................... 1

STATEMENT OF THE CASE AND THE FACTS ...................... 2

    I.    Plaintiffs Target the City of Richmond for a Lawsuit. ....................................................................... 2

    II.   *After* Filing Suit, Plaintiffs Submit Incomplete Applications for Permits to Erect Signs. .................... 4

    III.   The City Repeals the Sign Ordinance, Leading the District Court to Deny Plaintiffs' Preliminary Injunction Motion as Moot. ................... 6

    IV.   Plaintiffs File a First Amended Complaint, and the City Moves for Judgment on the Pleadings......... 7

    V.   Plaintiffs Attempt to Clarify Their Claims in a Second Amended Complaint, Which the City Moves to Dismiss. ...................................................... 8

    VI.   The Court Grants the City's Summary Judgment Motion After Plaintiffs File a Third Amended Complaint. ..................................................10

    VII.  Plaintiffs Fail to Preserve Evidence..........................12

SUMMARY OF THE ARGUMENT ...........................................14

ARGUMENT ...............................................................................17

    I.    Plaintiffs Muddle the Crucial Distinctions Between the Old Sign Ordinance and the Current Sign Ordinance and Between Their

i

Damages Claims and Their Claims for
Prospective Relief. .....................................................17

II.    The City's Repeal of the Old Ordinance Mooted
       All of Plaintiffs' Challenges to It Except Their
       Claims for Damages...................................................18

III.   Plaintiffs Lack Standing to Assert Their
       Damages Claims Based on the Old Ordinance.........20

       A.    The City Had Independent and Legitimate
             Bases for Denying Plaintiffs' Sign Permit
             Applications......................................................21

       B.    Plaintiffs Have No Standing to Challenge
             the Lack of Time Limits in the Old
             Ordinance Because Those Limits Had No
             Effect on Them. ................................................34

IV.    Even If Plaintiffs Had Standing to Assert
       Damages Claims Under the Old Ordinance, the
       District Court Correctly Rejected Them. ..................35

       A.    Plaintiffs Have No Damages Claim
             Because the City's Denial of Their Permit
             Applications Did Not Cause Their Alleged
             Damages............................................................35

       B.    Plaintiffs Never Challenged the
             Exemptions in the Old Ordinance and
             Thus Waived Any Such Challenge...................37

V.     The District Court Properly Rejected Plaintiffs'
       Challenge to the Current Sign Ordinance. ...............38

       A.    The Current Sign Ordinance's Exemption
             for "Traffic Control and Danger Signs" Is
             Constitutional. .................................................38

B.   The District Court Correctly Declined to Rule on Plaintiffs' New Arguments Challenging Provisions of the Current Sign Ordinance Not Identified in Their Complaint...........................................................41

VI.   The District Court Correctly Dismissed Plaintiffs' Remaining First Amendment Claims. .....45

VII.   The District Court Properly Granted Summary Judgment on Plaintiffs' Equal Protection Claim......49

A.   The City Met Its Burden on Summary Judgment by Showing that Plaintiffs Lacked Evidence to Support Their Claim........50

B.   Plaintiffs Failed to Produce Evidence in Support of Their Equal Protection Claim. .......51

C.   Plaintiffs Failed to Plead or Present Any Evidence that a City Policy or Custom Caused Their Alleged Equal Protection Injury.................................................................55

VIII.   The District Court Properly Sanctioned Plaintiffs for Destroying Evidence During and Shortly Before Litigation.........................................57

CONCLUSION ...........................................................................61

STATEMENT OF RELATED CASES .......................................61

CERTIFICATE OF COMPLIANCE .........................................62

iii

# TABLE OF AUTHORITIES

**Page**

## Cases

*Advantage Media, LLC v. City of Eden Prairie,*
  456 F.3d 793 (8th Cir. 2006).................................................. 22

*Brown v. Dunbar,*
  376 Fed. App'x 786 (9th Cir. 2010)......................................... 47

*Cal. Teachers Ass'n v. State Bd. of Educ.,*
  271 F.3d 1141 (9th Cir. 2001)................................................. 40

*Carmen v. San Francisco Unified Sch. Dist.,*
  237 F.3d 1026 (9th Cir. 2001)................................................. 54

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986).............................................................. 50

*Chase Manhattan Bank, N.A. v. Gems-By-Gordon, Inc.,*
  649 F.2d 710 (9th Cir. 1981)............................................. 28, 55

*Coastal Outdoor Adver. Group v. Twp. of Union, N.J.,*
  402 Fed. App'x 690 (3d Cir. 2010) ........................................... 4

*Coral Const. Co. v. King Cnty.,*
  941 F.2d 910 (9th Cir. 1991).................................................. 36

*Covenant Media of S.C., LLC v. City of N. Charleston,*
  493 F.3d 421 (4th Cir. 2007).................................................. 22

*Delia v. City of Rialto,*
  621 F.3d 1069 (9th Cir. 2010)............................................. 56, 57

*Desert Outdoor Advertising, Inc. v. City of Moreno Valley,*
  103 F.3d 814 (9th Cir. 1996).................................................. 44

*Devereaux v. Abbey*,
   263 F.3d 1070 (9th Cir. 2001)................................................. 50

*Filarsky v. Delia*,
   132 S.Ct. 1657 (2012)............................................................ 56

*Foti v. City of Menlo Park*,
   146 F.3d 629 (9th Cir. 1998)................................................. 44

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000).............................................................. 17

*G.K. Ltd. Travel v. City of Lake Oswego*,
   436 F.3d 1064 (9th Cir. 2006)......................................40, 43, 44

*Gerhart v. Lake Cnty.*,
   637 F.3d 1013 (9th Cir. 2011)................................................ 52

*Get Outdoors II, LLC v. City of San Diego*,
   506 F.3d 886 (9th Cir. 2007)............................................passim

*Harp Adver. Ill. Inc. v. Vill. of Chicago Ridge*,
   9 F.3d 1290 (7th Cir. 1993).................................................... 22

*Herson v. City of Reno*,
   806 F. Supp. 2d 1141 (D. Nev. 2011)............................4, 32, 33

*Herson v. City of San Carlos,*
   433 F. App'x 569 (9th Cir. 2011)...................................4, 23, 37

*Herson v. City of San Carlos*,
   714 F. Supp. 2d 1018 (N.D. Cal. 2010)............................... 4, 23

*Hill v. Colorado*,
   530 U.S. 703 (2000).............................................................. 45

*Hunt v. City of Los Angeles,*
   638 F.3d 703 (9th Cir. 2011).................................................. 35

*Intercontinental Travel Mktg., Inc. v. F.D.I.C.*,
    45 F.3d 1278 (9th Cir. 1994)........................................39, 48, 50

*Jackson v. Burke*,
    256 F.3d 93 (2d Cir. 2001) ...................................................... 52

*Jett v. Dallas Indep. Sch. Dist.*,
    491 U.S. 701 (1989)................................................................ 57

*Johnson v. Wells Fargo Home Mortg., Inc.*,
    635 F.3d 401 (9th Cir. 2011)................................................... 58

*KH Outdoor, LLC v. Clay Cnty.*,
    482 F.3d 1299 (11th Cir. 2007)....................................22, 31, 33

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006)............................................ 57, 59

*Mickwee v. Hsu*,
    753 F.2d 770 (9th Cir. 1985).................................................. 60

*Midwest Media Prop., LLC v. Symmes Twp.*,
    503 F.3d 456 (6th Cir. 2007)............................................. 22, 34

*Miller v. Fairchild Indus.*,
    797 F.2d 727 (9th Cir. 1986)............................................ 37, 39

*Monell v. Dep't of Social Servs.*,
    436 U.S. 658 (1978)....................................................16, 55, 56

*N. Pacifica LLC v. City of Pacifica*,
    526 F.3d 478 (9th Cir. 2008).......................................51, 52, 55

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*,
    854 F.2d 1538 (9th Cir. 1988).....................................40, 55, 58

*Outdoor Media Group, Inc. v. City of Beaumont*,
    506 F.3d 895 (9th Cir. 2007).................................................. 19

vi

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998) ................................................... 47

*Reed v. Town of Gilbert*,
  587 F.3d 966 (9th Cir. 2009) .................................. 25, 26, 44, 45

*Texas v. Lesage*,
  528 U.S. 18 (1999) ................................................................. 36

*Trishan Air, Inc. v. Fed. Ins. Co.*,
  635 F.3d 422 (9th Cir. 2011) ............................................ 37, 41

*Turner Broad. Sys. v. FCC*,
  512 U.S. 622 (1994) ............................................................... 26

*United States v. Home*,
  265 F. App'x 631 (9th Cir. 2008) ........................................... 19

*United States v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002) ................................................. 58

*Valley Outdoor, Inc. v. Cnty. of Riverside*,
  337 F.3d 1111 (9th Cir. 2003) ................................................ 22

*Village of Willowbrook v. Olech*,
  528 U.S. 562 (2000) ............................................................... 49

## State Statutes

Cal. Gov't Code § 65920 ............................................................ 35

Cal. Gov't Code § 65927 ............................................................ 35

Cal. Gov't Code § 65928 ............................................................ 35

Cal. Gov't Code § 65943 ............................................................ 35

Cal. Gov't Code § 65950 ............................................................ 35

Cal. Gov't Code § 8314 .............................................................. 43

vii

# Rules

9th Circuit Rule 28-2.2 ................................................................ 1

Fed. R. App. P. 28(a)(9)(A) .................................................. 39, 58

Fed. R. Civ. P. 56 ............................................................... 50, 51

## JURISDICTIONAL STATEMENT

Defendant City of Richmond ("City") agrees with Plaintiffs' statements at pages 1 to 3 of the Appellants' Opening Brief ("AOB") regarding the matters in Ninth Circuit Rule 28-2.2. However, as described below, the City contends that, under Article III of the Constitution, this Court and the district court lack jurisdiction over many of Plaintiffs' claims.

## STATEMENT OF THE ISSUES

1.   Did the district court properly dismiss Plaintiffs' claims seeking to invalidate the City's sign ordinance as it existed when the lawsuit was filed, because the claims were mooted by repeal of that ordinance?

2.   Plaintiffs challenged the City's rejection of applications  they submitted to erect signs in the City. Did the district court properly dismiss for lack of standing Plaintiffs' claims seeking damages based on the rejection, given that there were independent and constitutional bases for the rejection?

3.   Did the district court properly uphold the current sign ordinance's exemption for "traffic control and danger signs" as the least restrictive means of achieving the City's compelling

interest in protecting the lives and safety of those using City streets?

4.    Did the district court properly dismiss Plaintiffs' equal protection claim, given that Plaintiffs failed to identify any evidence to show that Plaintiffs were similarly situated to any other party or that the City intentionally treated them differently?

5.    Did the district court properly decline to consider claims Plaintiffs never raised in any of their numerous complaints and instead raised for the first time in opposition to summary judgment, after the close of discovery?

6.    Did the district court properly grant the City's motion for sanctions after Plaintiffs deleted e-mails and other electronic documents that were potentially relevant to the lawsuit?

## STATEMENT OF THE CASE AND THE FACTS

## I.   Plaintiffs Target the City of Richmond for a Lawsuit.

Plaintiffs East Bay Outdoor, Inc. ("EBOI"), a corporation incorporated seven weeks before this lawsuit was filed, and Jeffrey Herson, one of its employees, are ostensibly in the business of erecting and maintaining billboards, but neither plaintiff cur-

rently operates any. Plaintiffs' Excerpts of the Record on Appeal ("ER") 5:997-98; City's Supplemental Excerpts of the Record on Appeal ("SER") 1:96-97. In early 2009, Plaintiffs, who do business principally in Reno, Nevada, began to target the City of Richmond, California, for a lawsuit challenging the City's ordinance that regulates signs by seeking leases that would nominally allow Plaintiffs to erect signs on properties in the City. ER 2:207, 219-20, 241. Herson also erected one billboard in the City without applying for a sign permit or otherwise attempting to comply with the City's sign ordinance. ER 5:1015-16. He acknowledged that he erected the sign in an attempt to develop standing to sue the City. ER 5:1017-18.

Plaintiffs did just that on June 5, 2009, alleging that the City's sign ordinance, and other portions of the municipal code, violated the First Amendment and the California Constitution. ER 7:1383, 1385. Plaintiffs' primary target was the ordinance's prohibition of billboards within 660 feet of freeways and parkways. ER 7:1397-98. They sought permanent injunctive relief prohibiting the City from applying the ordinance to them, as well as damages. ER 7:1402-06. Plaintiffs also filed a motion for preliminary injunctive relief. ER 7:1505.

Plaintiffs are in the business not of erecting signs, but rather of filing lawsuits such as this. They have filed approximately thirty lawsuits against local governments alleging that sign ordinances unconstitutionally prevent them from erecting their desired billboards. ER 5:995-96. While this lawsuit has been pending, Plaintiffs litigated at least two similar lawsuits against municipalities, both of which have been dismissed. *See Herson v. City of Reno*, 806 F. Supp. 2d 1141 (D. Nev. 2011); *Herson v. City of San Carlos*, 714 F. Supp. 2d 1018, 1020 (N.D. Cal. 2010), *aff'd*, 433 F. App'x 569, 570 (9th Cir. 2011). In sum, Plaintiffs are repeat players "in a burgeoning line of cases in which a billboard company seeks to challenge the constitutionality of a local sign ordinance, otherwise known as the 'sign code shakedown.'" *Coastal Outdoor Adver. Group v. Twp. of Union, N.J.*, 402 Fed. App'x 690, 691 (3d Cir. 2010).

## II. *After* Filing Suit, Plaintiffs Submit Incomplete Applications for Permits to Erect Signs.

On June 26, 2009, 21 days *after* filing suit and while the preliminary injunction motion was pending, Plaintiff Herson submitted building permit applications for eight signs to City staff in the Planning Department. ER 5:999-1001. Planning

technician Ruby Benjamin, who was unaware of the pending lawsuit, was working at the Planning Department counter that day. ER 5:1032; SER 1:124. Herson told Benjamin that he knew the proposed signs were not allowed, but that his employer would not pay him unless the City stamped his applications "received." ER 5:1032-33, 1037-38, 1003-04. Herson thus requested that Benjamin write on each application why the signs were prohibited. ER 5:1032-33, 1003-04. To accommodate Herson's request, Benjamin wrote "Not allowed per Section 15.06.080 of the Richmond Sign Ordinance" or similar text on the top of each application. ER 5:1036, 1147-54. Benjamin said she did not keep copies of the applications or take any further steps to process them "because he was not submitting [them]." ER 5:1036-37, 1005.

Moreover, Plaintiffs' applications were so incomplete and defective that they were, at best, placeholders for more concrete submittals down the road. At worst, they were merely tools used by Plaintiffs to try to manufacture standing to sue. Rather than sign permit applications, Plaintiffs submitted building permit applications. ER 4:876; 5:1147-54, 1032, 1037, 978-80. The required design plans and site plans that Plaintiffs claim to have

submitted along with their applications lacked the basic information necessary for City approval. ER 5:1007-09; 4:876-77, 881. Plaintiffs also did not pay the application fee. ER 4:881.

Moreover, Plaintiffs' applications did not describe what they proposed to display on their signs. Rather, the applications stated generically that Plaintiffs intended to display "noncommercial and commercial speech." ER 5:1147-54. The City was therefore unaware of what messages Plaintiffs wished to display on their signs.

## III. The City Repeals the Sign Ordinance, Leading the District Court to Deny Plaintiffs' Preliminary Injunction Motion as Moot.

On July 7, 2009, before the district court heard Plaintiffs' preliminary injunction motion, the City Council repealed the City's sign ordinance in its entirety. ER 5:977; SER 1:91-92, 95. In its place, the Council adopted a temporary moratorium ordinance that prohibited the erection of permanent signs for 120 days (but allowed temporary signs) to give the City time to develop and adopt a new sign ordinance. SER 1:92-94.

Because the City had repealed the ordinance that Plaintiffs had challenged, on August 17, 2009, the district court denied Plaintiffs' motion for a preliminary injunction and dis-

missed as moot all of Plaintiffs' claims except the damages claims. SER 1:117-20. The district court granted leave to amend the complaint, however, to challenge the moratorium and/or any new sign ordinance the City might later adopt. SER 1:117, 119-20. (Plaintiffs have never challenged the moratorium ordinance.) Then, on September 22, 2009, the City Council replaced the moratorium ordinance with an entirely new sign ordinance.[1] ER 5:1177.

## IV. Plaintiffs File a First Amended Complaint, and the City Moves for Judgment on the Pleadings.

On November 2, 2009, Plaintiffs filed a First Amended Complaint re-alleging their challenge to the Old Ordinance's prohibition of billboards within 660 feet of freeways and parkways and alleging new claims challenging the Current Ordinance's variance procedures. SER 1:112, 114-15. The First Amended Complaint also challenged the zoning code's variance and conditional use permit provisions and alleged that the ordinances and the permit denial violated the First Amendment in a variety of ways. SER 1:113.

---

[1] The repealed ordinance is referred to as the Old Ordinance, while the ordinance that replaced the moratorium is referred to as the Current Ordinance.

7

The City thereafter moved for judgment on the pleadings under Rule 12(c). ER 1:94. Stating that the amended complaint was "in large part incomprehensible," the district court granted the motion in part and denied it in part. ER 1:94. The court granted the City's motion in two respects. First, it held that the zoning code's conditional use permit provisions and variance provisions did not apply to signs after repeal of the Old Ordinance, and thus were irrelevant to Plaintiffs' lawsuit. ER 1:95. Second, the court held that the variance procedures in the Current Ordinance were content-neutral and thus constitutional. *Id*. The district court denied the City's motion as to the rest of the Old Ordinance and Current Ordinance, stating that it was unclear on the record before the court whether the challenged provisions were constitutional. ER 1:96-98. The district court gave Plaintiffs leave to amend again. ER 1:98-99.

## V.    Plaintiffs Attempt to Clarify Their Claims in a Second Amended Complaint, Which the City Moves to Dismiss.

Plaintiffs then filed a Second Amended Complaint, which challenged the Old Ordinance's prohibition of billboards in 660-foot zone surrounding freeways and parkways, and denial of Plaintiffs' permit applications on that basis, and the Old Ordi-

nance's lack of time limits for reviewing permit applications. ER 6:1187-90, 1193-95. It also challenged the Current Ordinance's exemption for traffic control and danger signs and alleged an equal protection violation in the City's denial of Plaintiffs' permit applications. ER 6:1190-93, 1195.

The City moved to dismiss under Rule 12(b)(6), and the district court again granted the motion in part and denied it in part. ER 1:90. The court held, again, that Plaintiffs' claims for injunctive relief under the Old Ordinance were moot and that Plaintiffs could not challenge the Old Ordinance's lack of time limits for reviewing permit applications because the City had denied their applications on the same day they were submitted. ER 1:92. On the equal protection claim, the court decided that Plaintiffs had failed to state a claim but granted leave to amend to allege further facts. ER 1:91-92. The court denied the City's motion as to the rest of the Old Ordinance and Current Ordinance, stating that it needed an evidentiary record to determine whether Plaintiffs had standing to assert their claims and whether the challenged provisions were constitutional. ER 1:91-93.

## VI. The Court Grants the City's Summary Judgment Motion After Plaintiffs File a Third Amended Complaint.

Plaintiffs then filed a Third Amended Complaint, which once again challenged the Old Ordinance's prohibition of billboards in the 660-foot zone and its application to Plaintiffs in the permit denials, as well as the Current Ordinance's exemption for traffic control and danger signs. ER 5:1063-64, 1066-68. The Third Amended Complaint also again alleged an equal protection violation in denial of the permit applications. ER 5:1064-66.

After several months of discovery, the City moved for summary judgment. ER 1:72. In an April 25, 2011 order, the district court granted the City's motion in all respects but one. ER 1:72-89. The district court granted the City's motion as to the Current Ordinance, which it found was likely content neutral and passed strict scrutiny in any case. ER 1:86-87. The court also granted the City's motion as to Plaintiffs' equal protection claim, finding that Plaintiffs had failed to produce any evidence that the City intentionally treated Plaintiffs differently from any other applicant for a sign permit. ER 1:87-89.

The district court denied the motion as to the City's argument that Plaintiffs lack standing to claim damages based on the denial of their permit applications. ER 1:82. The City had argued (as it had in the prior two dispositive motions) that Plaintiffs lacked standing because City had fully constitutional grounds for rejecting the permit applications that were independent of the challenged prohibition on billboards: the applications were incomplete and defective and Plaintiffs' signs violated the applicable size and height limits in the Old Ordinance. The court found a question of material fact about whether the City would have denied the permit applications as defective and incomplete. ER 1:83-84. It also construed Plaintiffs' Third Amended Complaint as challenging the size and height limits in the Old Ordinance, but concluded that the parties had not fully briefed their constitutionality. ER 1:82. Therefore, the court authorized the parties to file supplemental cross-motions for summary judgment limited to that issue. ER 1:82-83.

The parties filed those cross-motions, and on December 5, 2011, the district court held that the size and height limits were content-neutral, time, place, and manner regulations. ER 1:35, 38-39. Accordingly, the court held, Plaintiffs had no standing to

claim damages because their signs would have been prohibited by the City's legitimate size and height limits. ER 1:41. The court therefore dismissed Plaintiffs' last remaining claim. ER 1:41. It entered judgment for the City on December 5, 2011, ER 1:34, and Plaintiffs timely appealed, ER 1:1.

## VII.  **Plaintiffs Fail to Preserve Evidence.**

During his October 26, 2010 deposition, Herson testified that he had presented site plans to the City with his permit applications. ER 2:192-93. He stated that Plaintiffs had not produced these site plans to the City during discovery because he had lost them. ER 2:106, 192. Herson then testified that he had effectively erased the electronic copies of the plans, and all the other files on his hard drive, by restoring his computer to its factory settings during the litigation, allegedly in response to a computer virus. ER 2:196-99. He admitted that he did not consult a computer expert before he took this action. ER 2:199. Herson also testified that he had deleted e-mails to and from putative lessors (owners of property where Plaintiffs allegedly wished to construct billboards) when his in-box became full. ER 2:208-09. A month after the deposition, Plaintiffs produced what

they claimed were hard copies of the site plans they allegedly submitted to the City along with their applications. ER 2:286.

After learning that Herson had withheld relevant documents and deleted electronically stored information, the City requested that he produce his computer for a forensic inspection. ER 2:281, 297-98. Although the forensic expert was unable to recover any relevant documents, he did confirm that the computer had been used for work relevant to the litigation. ER 2:317-18, 327. According to the expert, the deleted files might have been recoverable if they had not been overwritten by subsequent use of the computer. ER 2:318.

Because Plaintiffs were unwilling to share any of the costs of the forensic inspection, ER 2:281, 298-99, 301, 302, 305-06, the City brought a motion for sanctions, ER 7:1490. The magistrate judge who heard the motion found that Herson had "willfully deleted emails to and from putative lessors in violation of [his] duty [to preserve evidence]," ER 1:67, and that, in the middle the litigation, Herson had re-installed the operating system of his computer "in a manner that effectively deleted all the files on the hard drive," ER 1:65, 68. Accordingly, the magistrate judge awarded the City $15,000 in sanctions to compensate it

13

for the cost of the forensic examination of Herson's computer and a portion of the cost of the motion for sanctions.[2] ER 1:71. The district court later denied Plaintiffs' motion for relief from the magistrate judge's order. ER 1:51-52.

## SUMMARY OF THE ARGUMENT

Plaintiffs' challenge to the Old Ordinance became moot when the City repealed it on July 7, 2009; once it was repealed, there was nothing left to invalidate or enjoin. The only remaining claim was Plaintiffs' assertion that they were damaged—supposedly in the amount of tens of millions of dollars—by the City's application of the Old Ordinance to deny Plaintiffs' fragmentary sign permit applications.

But the district court correctly held that Plaintiffs have no standing to seek damages based on denial of the permit applications. The signs that Plaintiffs sought to erect were far larger than allowed under the ordinance's size and height limits. Those limits were content neutral and constitutional. Plaintiffs' permit applications were also patently defective, and the City could not have approved them. As a result, Plaintiffs could never have

---

[2] The City had sought an award of $33,065, which the magistrate judge reduced to $15,000. ER 1:69.

erected their proposed signs regardless of the Old Ordinance's prohibition on advertising billboards that Plaintiffs claim was unconstitutional. Accordingly, under this Court's decision in *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886 (9th Cir. 2007), Plaintiffs lacked standing to challenge the denial. For the same reason, Plaintiffs cannot satisfy the causation requirement of their damages claim: the allegedly unconstitutional prohibition on billboard advertising in the 660-foot zone around freeways was not the but-for cause of their alleged damages because the City could not and would not have approved the signs regardless of that allegedly unconstitutional prohibition.

Plaintiffs' challenge to the Current Ordinance fares no better. The ordinance's exemption for traffic control and danger signs erected by a public official survives even strict scrutiny, as the district court concluded, and in any event, it qualifies as content-neutral under this Court's precedents. The district court also properly rejected Plaintiffs' attempt, in response to the City's summary judgment motion, to assert new defects in the Current Ordinance that they never alleged in any of their four complaints. This Court should similarly reject Plaintiffs' effort on appeal to allege new defects in the ordinance.

The district court also properly rejected Plaintiffs' unsupported equal protection claim. Plaintiffs never demonstrated that they were similarly situated to anyone else who applied to the City for permission to erect signs, nor did Plaintiffs demonstrate that any difference in treatment they experienced was intentional. Finally, although the district court did not need to reach the issue, Plaintiffs' claim is also barred by *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because Plaintiffs could not show that any differential treatment was the result of a City policy. That fact also supports affirmance.

Finally, the district court was correct to impose sanctions on Plaintiffs to compensate the City for the computer forensic work necessitated by Plaintiffs' intentional destruction of evidence both before and during the litigation. Plaintiffs' have offered no authority to support their claim of error, and none exists.

16

# ARGUMENT

## I. Plaintiffs Muddle the Crucial Distinctions Between the Old Sign Ordinance and the Current Sign Ordinance and Between Their Damages Claims and Their Claims for Prospective Relief.

Plaintiffs challenge two different sign ordinances in this lawsuit: the Old Ordinance, which the City repealed on July 7, 2009, and the Current Ordinance, which replaced it. Plaintiffs' complaints alleged claims based on both ordinances, seeking both injunctive relief and damages.

But Plaintiffs' arguments in the Opening Brief shift back and forth between the Old Ordinance and the Current Ordinance, often without indicating which they are addressing. For example, they repeatedly refer generically to "the RMC" rather than to the Old or Current Ordinances. *E.g.,* AOB at 6, 22, 24-25.

Plaintiffs also erroneously blur the distinctions between the damages and prospective relief claims involving the Old Ordinance. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); *Get Outdoors II*, 506 F.3d at 893 ("[S]tanding is addressed on a claim by claim basis."). They make no specific reference to the damag-

es claims, though damages are all that could remain after the Old Ordinance's July 2009 repeal; all other claims are moot. *See infra* Section II. Indeed, it was Plaintiffs' claim that they were damaged by application of the Old Ordinance that occupied the vast majority of the litigation since the City repealed the Old Ordinance nearly three years ago. The district court correctly held that Plaintiffs had no standing to bring those damages claims. *See infra* Section III.

As described in the following sections, the district court was right to distinguish the challenges to the Old Ordinance from those to the Current Ordinance and to distinguish the damages claims from the prospective relief claims. Accordingly, the following arguments mirror the claim-by-claim approach taken by the district court, and do not replicate the confusing order of Plaintiffs' Opening Brief.

## II.   The City's Repeal of the Old Ordinance Mooted All of Plaintiffs' Challenges to It Except Their Claims for Damages.

The district court twice dismissed as moot Plaintiffs' claims seeking to invalidate or enjoin application of the Old Or-

18

dinance once the City repealed it.[3] SER 1:120; ER 1:90-91. The only claims based on the Old Ordinance that survived its repeal were Plaintiffs' damages claims (see *infra*). Yet Plaintiffs still claim they are entitled to relief "invalidating" or enjoining application of the Old Ordinance. AOB at 21-22, 29-30, 61-62.

Their argument is preposterous. Repeal of a municipal ordinance moots any claim seeking to invalidate or enjoin application of the repealed ordinance. *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 901 (9th Cir. 2007). Plaintiffs' effort to enjoin application of the *Current Ordinance* based on the alleged constitutional defects in the *Old Ordinance* is similarly meritless. ER 1:91. There is no legal basis for such a "compensatory injunction," *Outdoor Media Group*, 506 F.3d at 901, and Plaintiffs have offered none on appeal.

In fact, Plaintiffs conceded below that their facial challenge to the Old Ordinance became moot when the City repealed it. At the preliminary injunction hearing, Plaintiffs' counsel

---

[3] Plaintiffs have not included in the Excerpts of Record the district court's preliminary injunction orders, which dismissed their claims for prospective relief, and have therefore waived any claim of error based on them. *See, e.g., United States v. Home*, 265 F. App'x 631, 632-33 (9th Cir. 2008).

19

acknowledged that the "*facial challenge [to the Old Ordinance] is gone. Because that law no longer exists*. . . . [¶] But the as-applied challenge, you know, we sought permits for eight locations under the old ordinance. And, *that as-applied challenge* is still alive." SER 1:109 (emphases added); *see also* SER 1:110 (recognizing "the difference between a broad facial challenge which properly existed when the ordinance was in effect and an as-applied challenge which can only be applied to the signs we had already actually sought permits for").

### III.  Plaintiffs Lack Standing to Assert Their Damages Claims Based on the Old Ordinance.

The lion's share of three years of litigation were consumed by Plaintiffs' claim that they were damaged, to the tune of tens of millions of dollars, by a City staff person's rejection of their permit applications. As the district court held, however, Plaintiffs had no standing to claim damages, because the City could not and would not have approved their applications and proposed signs for several independent and legitimate reasons. Plaintiffs object, summarily, to the district court's conclusion. AOB at 22-23.

### A.    The City Had Independent and Legitimate Bases for Denying Plaintiffs' Sign Permit Applications.

This and other circuits have repeatedly held that a plaintiff lacks standing to challenge one stated reason for denying a sign permit when other, constitutional reasons also support the denial. In these circumstances, no favorable ruling from the court would redress the plaintiff's injury. Remarkably, Plaintiffs have not addressed *a single one* of these cases in the Opening Brief, even though the district court relied on and discussed them extensively.

In *Get Outdoors II,* 506 F.3d at 890, for example, the plaintiff challenged the city's denial of sign permits on allegedly content-based grounds. The city asserted in the litigation that it also would have also denied the permits because the proposed signs exceeded the size and height limits in the city's sign ordinance. *Id.* at 892. This Court held that the size and height limits supplied an independent basis for denying the permits and went on to uphold those limits as content neutral and constitutional. *Id.* at 893-94. Because those limits independently barred the plaintiff's signs, the Court held that the plaintiff lacked standing to challenge denial of the sign permits on another basis even

21

if that other basis was unconstitutional. *Id.* at 892; *see also Valley Outdoor, Inc. v. Cnty. of Riverside*, 337 F.3d 1111, 1114-15 (9th Cir. 2003) (damages claim based on repealed sign ordinance barred because "the subject billboards were 'independently' illegal under that ordinance's content-neutral zoning, size, and height provisions").

Numerous other circuits have reached the same conclusion. *See, e.g., Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 430 (4th Cir. 2007); *Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 461 (6th Cir. 2007); *Harp Adver. Ill. Inc. v. Vill. of Chicago Ridge*, 9 F.3d 1290, 1291-92 (7th Cir. 1993); *Advantage Media, LLC v. City of Eden Prairie*, 456 F.3d 793, 801-802 (8th Cir. 2006); *KH Outdoor, LLC v. Clay County*, 482 F.3d 1299, 1303 (11th Cir. 2007).

Relying on this Court's decision in *Get Outdoors II,* the district court correctly held that Plaintiffs lacked standing to seek damages because Plaintiffs' proposed signs violated the City's content-neutral size and height limits for signs. ER 1:37, 41. In granting the City's supplemental motion for summary judgment, the court held that Plaintiffs' signs were barred by the size and height limits in the Old Ordinance applicable to Type-B

Freestanding Signs, the kind of signs that Plaintiffs sought to erect.[4] ER 1:38, 40-41. Furthermore, Plaintiffs' signs all violated an independent limit on the "total display area" of signs on each of the properties on which they proposed to erect them.[5] SER 1:15. Plaintiffs offer no argument to the contrary on appeal. Finally, Plaintiffs' permit applications would have been denied regardless based on their innumerable defects.

> ### 1. Plaintiffs' Signs Were Prohibited by Legitimate and Unchallenged Size and Height Limits for "Type B Freestanding Signs."

Plaintiffs have conceded that their signs are Type-B signs, ER 1:38, and they have not disputed that the sign drawings they submitted with their permit applications depicted signs

---

[4] In the motion for summary judgment, the City noted that Plaintiffs had never argued that the Old Ordinance's size and height limits were unconstitutional. However, the district court liberally construed the complaint to make that argument and thus invited further briefing on whether those limits were constitutional. ER 1:81-82.

[5] The district court also noted that another district court had recently rejected Plaintiffs' challenge to the City of San Carlos's sign ordinance on the same basis. ER 1:40 (citing *Herson v. City of San Carlos*, 714 F. Supp. 2d 1018 (N.D. Cal. 2010)). This Court affirmed the *San Carlos* decision on appeal. *Herson v. City of San Carlos*, 433 F. App'x 569 (9th Cir. 2011).

many times larger than the maximum size allowed for Type-B Freestanding Signs. ER 1:41. Under the Old Ordinance, Type-B signs in the 660-foot zone around freeways could not exceed 40 square feet in area and 12 feet in height. ER 5:1136-39 (Old Ordinance § 15.06.080(C)(6)(g)(ii)). Even the smallest of Plaintiffs' proposed signs would have been 35 feet tall and several hundred square feet in area. SER 1:13. In fact, Plaintiffs' proposed signs exceeded the maximum area permitted for *any* type of sign under the Old Ordinance. *See, e.g.*, ER 5:1136-39 (Old Ordinance § 15.06.080(C)(6)(i)) ("[m]ajor gateway area identification signs" limited to 100 square feet per sign face); *id*. (§ 15.06.080(C)(6)(b) ("[b]erm sign" limited to 150 square feet in area); *id*. § 15.06.080(C)(6)(c)) ("[m]onument sign" limited to 100 square feet in area); *id*. (§ 15.06.080(C)(6)(g)(i)) ("Type A" freestanding sign limited to 60 square feet in area). Accordingly, the district court correctly concluded that the City could not have approved Plaintiffs' signs regardless of the Old Ordinance's prohibition of billboard advertising.

Plaintiffs also have not argued that the Type-B Freestanding sign category or its size limits are defined by content, nor could they. The Type-B sign is defined as "[a] freestanding sign

24

in which the sign panel is affixed directly to and atop of the supporting member. Also known as a pole sign, lollipop sign, etc." ER 5:1113-15 (Old Ordinance § 15.06.050(A)(2)(e)(ii)). The size limits themselves also make no reference to content: "Type B freestanding sign: [¶] (A) Height: Twelve feet, [¶] (B) Area: Forty square feet." ER 5:1136-39 (Old Ordinance § 15.060.080(C)(6)(g)(ii)).

Instead, Plaintiffs focus on the size limits applicable to a *different* category of signs, Major Gateway Area Identification Signs, which, under the Old Ordinance, could be larger than Type-B signs, and argue that those limits were an impermissible content-based "exception" that converted the Type-B limits into content-based limits. AOB at 37-41.

On the contrary, the Major Gateway category does not convert the Type-B limits into content-based restrictions, for at least three reasons.

First, the Major Gateway sign category is not content based. It is not meaningfully different from the category of "Temporary Directional Signs Relating to a Qualifying Event" that this Court upheld as content neutral in *Reed v. Town of Gilbert*, 587 F.3d 966, 976-78 (9th Cir. 2009). Similar to those

25

signs, which identified the location of an event and directions to reach it, the Major Gateway signs are similarly "directional": they merely "announc[e] the location of major city centers." ER 5:1113-14 (Old Ordinance § 15.06.050(A)(1)(h)). Such "[a] directional sign," the *Reed* court held, "does not contain a message such that regulating directional signs would inherently 'distinguish favored speech from disfavored speech on the basis of the ideas or views expressed.'" 587 F.3d at 977 (quoting *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 643 (1994)). Like the *Reed* signs, the Major Gateway sign category "does not mention any idea or viewpoint, let alone single one out for differential treatment." *Id.* Because the Major Gateway sign category is not content-based, even if it were considered an exception to the Type-B size limits, it would not make the Type-B limits content based.

Second, Plaintiffs' proposed signs also exceeded the size limits for Major Gateway signs. In fact, as noted above, they exceeded the size limits for *all* signs allowed within the 660-foot zone, regardless of structure or content. *See supra*. Accordingly, Plaintiffs cannot claim that their massive signs could have been approved if only they had proposed one of the Major Gateway

26

Area Identification "messages" supposedly favored by the City. The City could not have approved them, whatever their content.

Third, the Major Gateway sign category is not an "exception" to the Type-B limits. Unrebutted evidence indicates that the City applies the most restrictive applicable size and height limits if a sign qualifies under more than one sign category. *See* SER 1:15. Accordingly, a Type-B sign does not become subject to more lenient size and height limits if it qualifies as a Major Gateway sign. Even if that sign category were content based, it would not alter the size and height limits applicable to the Type-B freestanding signs Plaintiffs proposed here.

### 2. Plaintiffs' Signs Were Independently Prohibited by the Old Ordinance's "Total Display Area" Limits.

Putting aside the Type-B size limits, Plaintiffs' proposed signs also violated an independent limit on the "total display area" of all signs erected on a single parcel of property. The district court did not reach this issue because it dismissed the damages claim based on the size and height limits applicable to Type-B Freestanding signs, but the City raised it below, and it provides an independent basis for affirmance. *See Chase Manhattan Bank, N.A. v. Gems-By-Gordon, Inc.*, 649 F.2d 710, 712 (9th Cir.

27

1981). Plaintiffs have never attempted to dispute this fact, either below or in the Opening Brief.

Section 15.06.080(C)(2) of the Old Ordinance provided that the total area for all signs on a single property could not exceed one square foot for every one linear foot of street frontage or 20 square feet, whichever was greater. ER 5:1136-37. This limit was designed to manage the density of signs and avoid distracting visual clutter. SER 1:11. The provision applied to *all* signs, regardless of the messages displayed on them, and thus was content-neutral. Nor was it subject to any "exceptions." The City demonstrated that Plaintiffs' proposed signs exceeded the applicable total display area limits for the properties on which they were proposed to be built. *See* SER 1:3-5, 7-9, 12-15. Plaintiffs never contested any of this evidence.

### 3. Plaintiffs' Permit Applications Were Pervasively Defective.

Plaintiffs also lack standing because the City would have rejected the permit applications as incomplete and defective. Although the district court did not rely on this basis, the City raised the argument below, SER 1:99-102, and this Court may affirm on that basis. *See Gems-By-Gordon*, 649 F.2d at 712.

28

Before erecting signs in the City, Plaintiffs had to obtain a "sign permit" from the Planning Division of the Planning and Building Department, ER 5:1113 (Old Ordinance § 15.06.040(A)(1)); SER 1:53, and then a "building permit" from the Building Division. ER 4:861. Applicants had to submit, among other things, design plans for the signs they wished to erect and site plans that show the location of the proposed signs with respect to nearby signs and other features. SER 1:53.

Plaintiffs failed to comply with these requirements in numerous ways. First, they submitted only *building* permit application forms, not *sign* permit application forms, and thus omitted information required for a sign permit. SER 1:54; *compare* ER 5:1147-54 (Plaintiffs' applications) *with* SER 1:54, 62.

Second, Plaintiffs did not propose any particular sign for approval by the City. Rather, they admitted submitting three "generic" drawings of billboards, allegedly hoping the City would tell them which sign to construct. ER 5:1005-10, 1021-23. The City cannot grant a sign permit based on generic plans; the applicant must submit plans depicting the *particular* sign it wishes to erect. SER 1:54-55.

Third, these three generic drawings did not satisfy the City's requirements that all sign permit applications contain "design plans." They omitted numerous details about the proposed signs that the City required from applicants. ER 5:1007-08, 1021-23; SER 1:54-55. Nor were the drawings adequate for obtaining the required building permit, because they were not designed, as required, to comply with the 2007 California Building Code. ER 4:862. Plaintiffs' site plans were similarly defective. SER 1:55-59.

Given these pervasive defects, the City would not have issued either a sign permit or a building permit for the construction of any signs, regardless of the prohibitions in the Old Ordinance that Plaintiffs allege were unconstitutional. SER 1:59; ER 4:862. Plaintiffs have never alleged that the permit application requirements were unconstitutional. They thus cannot have been damaged by the denial of permit applications that were independently defective under admittedly constitutional requirements.

Faced with similarly defective sign permit applications, the Eleventh Circuit held that a billboard operator lacked standing to challenge a county's denial of sign permits under an

allegedly unconstitutional sign ordinance. *KH Outdoor*, 482 F.3d at 1303-04. Although the county had not asserted that the applications were defective when denying the applications, KH Outdoor's applications also "failed to comply with applicable provisions" of the Florida Building Code, which KH Outdoor had not challenged, including requirements for design drawings. *Id.* at 1303-04. The court therefore held that invalidating the ban on new billboards would not allow KH Outdoor to erect their signs, and thus KH Outdoor's constitutional claims were not redressable. *Id.*

The district court concluded that whether the City would have denied the permit applications on this basis was a disputed question of material fact. ER 1:15-16. On the contrary, Plaintiffs put on no evidence to counter the City's evidence that it would have denied the permit applications on this basis. The City's evidence showed that, even if Plaintiffs had immediately resubmitted complete applications, the City could not have approved those applications before the moratorium ordinance went into effect on July 7, 2009. SER 1:59; ER 4:861. The district court relied on testimony by Herson that he would have immediately resubmitted complete applications, ER 1:15-16, but

that evidence did nothing to rebut the City's evidence that City staff could not have *processed* the applications before the moratorium became effective. Accordingly, uncontroverted evidence showed that the City could not have approved Plaintiffs' defective applications even if—implausibly—Plaintiffs had instantly corrected the numerous defects.

### 4. Plaintiffs Cannot Avoid the City's Independent Bases for Denial of the Permit Applications.

Plaintiffs attempt to avoid the effect of the Old Ordinance's limits on the size of Type-B signs and on the total display area on a property by arguing that Plaintiffs would have erected signs of whatever size the City would have allowed. AOB at 42-43. Even ignoring its implausibility,[6] the argument is irrelevant. *See Herson v. City of Reno*, 806 F. Supp. 2d at 1146 & n.2 (rejecting the same argument by the same plaintiff as "unspecified and indefinite"). Plaintiffs here claim to have been damaged by denial of the permit applications they filed. They

---

[6] The *smallest* of Plaintiffs' proposed sign designs was almost *three times* taller than the tallest allowable Type-B sign and approximately *ten times* greater in area. *See* ER 5:1136-39 (Old Ordinance § 15.06.080(C)(6)(g)(ii)); SER 1:54.

cannot obtain damages based on hypothetical permit applications they supposedly would have filed but did not. *See id.*

Plaintiffs also now claim that they never told the City what size signs they intended to erect and that a question of material fact remains on this issue. AOB at 43. On the contrary, Herson himself unambiguously testified that he provided sign drawings to the City with his applications, and those drawings clearly depict the size and height of the signs. ER 5:1005-06, 1007-09, 1021-23. In fact, if Herson had not submitted those drawings, Plaintiffs' permit applications would have been even more flagrantly incomplete than they were—another independent basis for denying them. *See supra* Section III.A.3.

Finally, contrary to Plaintiffs' assertion, *see* AOB at 35, 41-42, it is irrelevant whether the City actually relied on the size and height limits or the applications' numerous omissions when the City denied Plaintiffs' permit applications. *See Get Outdoors II*, 506 F.3d at 892 (where city demonstrated *during litigation* that it *would have* denied permits based on size and height limits, "the size and height restrictions constitute a secondary cause of the denial of the permits"); *see also, e.g., KH Outdoor*, 482 F.3d at 1303 (holding that plaintiff lacked standing because

its sign applications failed to meet the requirements of other applicable regulations even though the city had not denied the applications on those grounds); *Midwest Media*, 503 F.3d at 460-62. The City here demonstrated that it would have denied Plaintiffs' applications based on both the size and height limits and the numerous defects in the permit applications. SER 1:15, 59; ER 4:862.

### B. Plaintiffs Have No Standing to Challenge the Lack of Time Limits in the Old Ordinance Because Those Limits Had No Effect on Them.

Plaintiffs challenge the district court's dismissal of their claim that the Old Ordinance lacked adequate time limits for decision on sign permit applications. AOB at 28-29. But Plaintiffs lacked standing to assert this claim because the City rejected Plaintiffs' permit applications on the same day Plaintiffs submitted them. ER 1:92. Thus, Plaintiffs were not injured by an unlawful delay in the processing of their application, and they have no standing to assert the claim. *See Get Outdoors II*, 506 F.3d at 892 (plaintiff has standing to challenge only those provisions that applied to it). Moreover, to the extent Plaintiffs meant to assert an overbreadth challenge (based on alleged unconstitutionality as applied to others), damages are not an

34

available remedy. *See Hunt v. City of Los Angeles,* 638 F.3d 703, 710 (9th Cir. 2011).

Regardless, the City's action on sign permit applications under the Old Ordinance was adequately cabined by California's Permit Streamlining Act, Cal. Gov't Code § 65920 *et seq.* It requires the City to (1) notify a project applicant within thirty days whether her application is complete (*id.* § 65943) and (2) approve or deny the proposed project within a specific period of time (60, 90, or 180 days) from the completion of state mandated environmental review (*id.* § 65950). Sign permits issued under the Old Ordinance were subject to these time limits. *Id.* §§ 65927, 65928 (defining "development project" as the "placement or erection of any solid material or structure" for which a permit is required).

## IV.   Even If Plaintiffs Had Standing to Assert Damages Claims Under the Old Ordinance, the District Court Correctly Rejected Them.

### A.   Plaintiffs Have No Damages Claim Because the City's Denial of Their Permit Applications Did Not Cause Their Alleged Damages.

Even if Plaintiffs had standing, the district court properly held that the allegedly unconstitutional provisions of the Old Ordinance were not the but-for cause of Plaintiffs asserted

damages. ER 1:41. Plaintiffs have not challenged this conclusion in their Opening Brief and thus have waived the objection.

"[I]f the government has considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless defeat liability by demonstrating that it would have made the same decision absent the forbidden consideration." *Texas v. Lesage*, 528 U.S. 18, 20-21 (1999) (per curiam); *see also Coral Const. Co. v. King County*, 941 F.2d 910, 926 (9th Cir. 1991) (describing "section 1983's causation requirement"). Where the defendant carries this burden, "there is no cognizable injury warranting relief under § 1983." *Lesage*, 528 U.S. at 21.

The district court found that the City would have made the same decision to reject Plaintiffs' permit applications "absent the forbidden consideration," because the proposed signs violated the Old Ordinance's legitimate size and height limits. ER 1:41. It would have done so as well based on the numerous defects in Plaintiffs' permit applications. *See supra* Section III.A.3. Accordingly, Plaintiffs could not prevail on their claim.

In the Opening Brief, Plaintiffs do not contest this independent holding supporting summary judgment and thus have waived any claim of error. *See Miller v. Fairchild Indus.*, 797

36

F.2d 727, 738 (9th Cir. 1986), *cited in Herson v. City of San Carlos*, 433 F. App'x at 570 ("Herson waived his challenge of the billboard restriction by not raising it in his opening brief on appeal.").

### B.    Plaintiffs Never Challenged the Exemptions in the Old Ordinance and Thus Waived Any Such Challenge.

Plaintiffs argue at length that the district court should not have dismissed their supposed challenge to the exemptions for specified signs in section 15.06.060 of the Old Ordinance. AOB at 44-48. But they never alleged that claim in any of their four complaints. Instead, they attacked the exemptions for the first time in trying to avoid summary judgment. SER 1:86-87. The district court rejected that as one of the many arguments that Plaintiffs improperly asserted for the first time in opposing summary judgment. ER 1:79-80. It was correct to do so. *See Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011).

37

## V. The District Court Properly Rejected Plaintiffs' Challenge to the Current Sign Ordinance.

### A. The Current Sign Ordinance's Exemption for "Traffic Control and Danger Signs" Is Constitutional.

In their Third Amended Complaint, Plaintiffs challenged only one provision of the Current Ordinance: Section 15.06.070(A)(ii). ER 5:1066, 1067-68; *see also* SER 1:106 (clarifying that all claims against Current Ordinance in Second Amended Complaint "were drafted to target Section 15.06.070(A)(ii)"). This provision exempts only "[t]raffic control and danger signs erected by a governmental entity" from the size and permitting requirements of the Current Ordinance. ER 5:1180.[7]

Citing the City's evidence, the district court found that this narrow exemption survived strict scrutiny as the least restric-

---

[7] This exemption previously included "[g]overnmental and other signs for control of traffic and other regulatory purposes, including street signs, danger signs, railroad crossing signs, and signs of public service companies indicating danger or aids to service or safety, including signs showing the placement or location of underground public utility facilities." ER 5:1164 (§ 15.06.070(A)(ii)). The City revised this provision in June 2010 to read "Provisions of this chapter shall not apply to the placement of . . . Traffic control and danger signs erected by a governmental entity." ER 5:1180.

tive means to achieve the City's compelling interest in protecting the lives of drivers, pedestrians, work crews, and emergency responders who use City streets. ER 1:18-19. The court described Plaintiffs' evidence to the contrary as "at best a red herring, a means to distract from the actual strict scrutiny at issue here." ER 1:19. Plaintiffs do not dispute this holding in their Opening Brief and thus have waived any challenge to it. *See Miller*, 797 F.2d at 738, *cited in Herson v. City of San Carlos*, 433 F. App'x at 570.

Instead, Plaintiffs appear to make the entirely new argument that the exemption for "traffic control and danger signs" is unconstitutionally vague. *See* AOB at 49-50 (arguing that exemption "may be problematic" because "traffic control and danger signs" are not adequately defined). Plaintiffs' sole support for this argument is their outlandish assertion that the City could use the exemption to erect signs reading "Danger, Stop abortion." *Id*.

Plaintiffs did not raise this argument below or support it with any legal authority on appeal and thus have waived it. *See Intercontinental Travel Mktg., Inc. v. F.D.I.C.*, 45 F.3d 1278, 1286 (9th Cir. 1994); Fed. R. App. P. 28(a)(9)(A) (requiring appellant's

brief to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies"); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1548 (9th Cir. 1988).

Moreover, the meaning of "traffic control and danger signs" is unambiguous: it refers to City signs used to inform drivers and pedestrians of traffic regulations (e.g., "Stop," "No U-Turn," "One Way," "Yield to Pedestrians") as well as changes to traffic patterns caused by road construction, accidents, and special events. ER 4:871-72. *See G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1076 (9th Cir. 2006) (adopting city's interpretation of its own ordinance where reasonable). A statute is unconstitutionally vague only if its deterrent effect on legitimate expression is "both real and substantial." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001). Here, no reasonable person would interpret the City's exemption to allow it to erect signs related to perceived *moral* dangers. As a result, Plaintiffs' eleventh hour claim of vagueness is meritless.

**B.    The District Court Correctly Declined to Rule on Plaintiffs' New Arguments Challenging Provisions of the Current Sign Ordinance Not Identified in Their Complaint.**

After two dispositive motions and three amended complaints, Plaintiffs argued for the first time in opposition to summary judgment that several additional sections of the Current Ordinance—including the sections governing legal, non-conforming signs, an exemption for official notices, and permits for multiple, temporary signs—were unconstitutional. ER 1:79-80. The district court declined to consider these new claims, because (1) they were not identified in the complaint, and (2) allowing Plaintiffs to raise them at that point, after the close of discovery, would have been unfairly prejudicial to defendant. ER 1:80; *see also Trishan Air*, 635 F.3d at 435.

Plaintiffs now argue that the district court misread their complaint, which, they say, "[c]learly . . . placed the City on notice" that they were not just challenging § 15.06.070(A)(ii) of the Current Ordinance, but were also challenging "various other provisions of the New Sign Code." AOB at 52, 53.

This argument cannot be squared with the record below. After Plaintiffs filed an "incomprehensible" First Amended Complaint, the district court ordered them to clarify their

41

claims by stating specifically which provisions of the Old and Current Ordinances they were challenging. ER 1:94, 98-99. In response, Plaintiffs' Second and Third Amended Complaints identified only one section of the Current Ordinance as unconstitutional: Section 15.06.070(A)(ii), the exemption for traffic control and danger signs. ER 5:1066, 1067-68; 6:1191-92, 1195. Plaintiffs further argued in their opposition to the City's Motion to Dismiss that all of their claims against the Current Ordinance "were drafted to target Section 15.06.070(A)(ii)." SER 1:106. And the two allegations that, according to the Opening Brief, should have "[c]learly" put the City on notice of this broader challenge, address only the *Old* Ordinance. AOB at 52-53 (citing Third Amended Complaint Paragraph 7, which defines the *Old* Ordinance and indicates that various provisions of that ordinance are attached as exhibits, and Paragraphs 20-22, which allege that the City's sign regulations "as of June 26, 2009"—i.e., the *Old* Ordinance—violated the First Amendment). Because Plaintiffs have failed to identify any error in the district court's interpretation of their complaint, this Court must uphold that interpretation.

Even on appeal, the only other provision of the Current Ordinance that Plaintiffs specifically mention is Section 15.06.070(A)(i), the exemption for "[o]fficial notices posted by public officers in performance of their duties." AOB at 48-49. Although Plaintiffs appear to argue that this exemption is unconstitutionally vague, they did not press that argument below, and thus cannot make it on appeal. *See* ER 1:19; ER 5:1066, 1067-69 (alleging only that Section 15.06.070(A)(ii) is unconstitutional).[8]

Plaintiffs also describe the exemption for "[o]fficial notices posted by public officers in performance of their duties" as "content based," although they make no effort to justify that conclusion. AOB at 49. On the contrary, under two of this Court's most recent sign ordinance decisions, the exemption is content neutral. *See G.K. Ltd. Travel*, 436 F.3d at 1076-78 (finding exemptions for public signs, signs for hospital or emergency services, legal notices, railroad signs, and danger signs to be speaker

---

[8] Moreover, this exemption could not be used to post signs saying "Support the Mayor's Agenda" or "Vote for Mayor Smith," as Plaintiffs suggest (AOB at 48-49), because City officials are prohibited by state law from posting campaign materials "in performance of their duties." *See* Cal. Gov't Code § 8314(a).

based and content neutral); *Reed*, 587 F.3d at 977-78 (finding regulation of directional signs for certain "qualifying events" to be content neutral). Like the regulations at issue there, the Current Ordinance's exemption for official notices is content neutral because it requires the enforcing officer to consider only two, content-neutral factors: whether the sign was posted (1) by a public officer (2) in performance of his duties. It does not express a preference for any particular point of view, and thus is not subject to strict scrutiny. *See G.K. Ltd. Travel*, 436 F.3d at 1076-77 (holding that speaker-based laws demand strict scrutiny only when "they reflect the Government's preference for the substance of what the favored speakers have to say").

The two cases cited by Plaintiffs without analysis—*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998), and *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814 (9th Cir. 1996) ("*Moreno Valley*")—do not dictate a contrary result. In each case, the Court concluded that an ordinance was content based because an enforcing officer would have to read a sign to determine whether the ordinance applied. *See Foti*, 146 F.3d at 636; *Moreno Valley* 103 F.3d at 820. The Supreme Court subsequently declined to endorse this "officer-must-read-it" test,

44

holding, "We have never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct." *Hill v. Colorado*, 530 U.S. 703, 721 (2000); *see also Reed,* 587 F.3d at 978 (following *Hill* and rejecting "officer-must-read-it" test). Under this Court's post-*Hill* decisions, the exemption for "official notices posted by public officers in performance of their duties" is content neutral.

## VI.   The District Court Correctly Dismissed Plaintiffs' Remaining First Amendment Claims.

On appeal, Plaintiffs complain at length that the City's design review and conditional use permit ("CUP") processes, both portions of the City's zoning code rather than of the sign ordinance, violate the First Amendment. AOB at 23-34. Plaintiffs assert (incorrectly) that an individual seeking to erect a sign in the City may do so by obtaining *either* a sign permit, under the Current Sign Ordinance, *or* a CUP, under the zoning code. *Id*. at 33. Plaintiffs then argue that the zoning code provisions governing the issuance of CUPs "fail[] constitutional requirements." *Id*. Plaintiffs also attempt to argue that Chapter 4.04 of the Municipal Code, which contains amendments to the "Uniform Sign

45

Code," contains unconstitutional restraints on speech. *Id.* at 50. However, the district court was right to reject these arguments: these provisions are irrelevant to approval of signs in the City.

The design review and CUP provisions are part of the City's zoning code and were unaffected by repeal of the Old Ordinance; they are not part of the sign ordinance. *Compare* ER 5:1112 *et seq.* ("Chapter 15.06 Use and Display of Signs") *with* ER 5:1099 ("15.04.930 Design Review") *and* ER 5:1080 ("15.04.910 Conditional Use Permits"); *see also* SER 1:119. Although the Old Ordinance had incorporated these provisions by reference for the approval of some signs, *see, e.g.,* ER 5:1113 (§ 15.06.040), once the City repealed the Old Ordinance, those provisions no longer applied to signs, SER 1:119.

Indeed, since the Old Ordinance's repeal, nothing in the City's municipal code supports Plaintiffs' assertion that "[a]n approved [CUP] may be used in lieu of a sign permit" to erect signs in the City, and thus it is unsurprising that Plaintiffs cite nothing for this proposition. AOB at 33. The district court was therefore correct in holding that the CUP provisions "do not seek to regulate the process by which permission for sign placements is granted, and are not relevant to the newly enact-

ed sign ordinance." ER 1:95. As a result, these CUP provisions did not impose any unconstitutional restraint on their right to erect signs—they are simply irrelevant. *Id*.

Likewise, Plaintiffs' First Amendment attack on the design review procedures is off-base. *See* AOB at 24-26 (citing "RMC §15.04.930" and "RMC § 16.06.040"). Nothing in the Current Ordinance subjects signs to the zoning code's design review process. Instead, the Current Ordinance contains its own sign permit application procedures. *See* ER 5:1161-64 (Current Ordinance § 15.06.050-055). Because the design review provisions of Section 15.04.930 do not apply to sign permit applications submitted under the Current Ordinance, they cannot render that ordinance invalid, nor did they prevent Plaintiffs from erecting signs.

In any event, after raising this claim in their original complaint, Plaintiffs never realleged it in any of their three subsequent amended complaints. AR 7:1396-97; SER 1:120, 117. As a result, Plaintiffs waived this claim. *See Parrino v. FHP, Inc*., 146 F.3d 699, 704 (9th Cir. 1998), *superseded by statute on other grounds as stated in Brown v. Dunbar*, 376 Fed. App'x 786, 787 (9th Cir. 2010).

47

Plaintiffs also lack standing to claim damages based on the design review and conditional use permit provisions of the City's zoning code because the City never applied them to Plaintiffs. *See Get Outdoors II*, 506 F.3d at 892. On the contrary, Plaintiffs have argued that the City's *only* basis for denying their permit applications was that the content of their signs was prohibited by Section 15.06.080 of the Old Ordinance. *See* AOB at 34 (conceding that "Herson never subjected himself to the design review or the CUP standards").

Finally, Plaintiffs now argue for the first time that Section 4.04.040(I) of the City's municipal code is unconstitutional. AOB at 50-51. Although Plaintiffs attached Chapter 4.04 to each of their complaints, they never alleged or argued below that any part of this chapter is unconstitutional, or how it was applied to them, other than a one-sentence footnote in their opposition to summary judgment. SER 1:85. As a result, they cannot make these arguments on appeal.[9] *See Intercontinental Travel Mktg., Inc.*, 45 F.3d at 1286.

---

[9] Furthermore, the section that Plaintiffs now argue is unconstitutional—Section 4.04.040—contains only *amendments* to another document, the "Uniform Sign Code." *See* ER 5:1073. Plaintiffs never presented the Uniform Sign Code itself in the district

## VII. The District Court Properly Granted Summary Judgment on Plaintiffs' Equal Protection Claim.

The gravamen of Plaintiffs' equal protection claim has never been clear. Plaintiffs' most recent theory, however, seems to be that they constitute a "class of one," and that the City "intentionally treated [them] differently from others similarly situated," with "no rational basis for the difference in treatment." *See* AOB at 57 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)). In particular Plaintiffs argue the City treated them differently from another sign permit applicant, the owner of the Pacific East Mall, on account of the Mall owner's campaign contributions to a City Council member. AOB at 58-59. Plaintiffs first advanced this argument in opposition to summary judgment, where they abandoned their earlier theory that the City had discriminated against them based on the content of the messages they intended to display on their proposed signs. ER 5:1064-65; SER 1:88.

On appeal, Plaintiffs argue that the district court's grant of summary judgment on this class-of-one claim was erroneous because (1) the City failed to meet its initial burden under Rule

court proceedings, and they freely admit that they do not even know what the Uniform Sign Code is. AOB at 50 n.4.

56 and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); and (2) Plaintiffs had presented sufficient evidence to show a dispute of material fact requiring a trial. AOB at 54. Once again, Plaintiffs' arguments have no merit.

### A. The City Met Its Burden on Summary Judgment by Showing that Plaintiffs Lacked Evidence to Support Their Claim.

Rule 56 provides that "[w]hen the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case'" to establish entitlement to summary judgment. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp*, 477 U.S. at 325). Once the moving party makes this showing, the burden shifts to the opposing party to identify evidence that supports its claims. *Id.*

Plaintiffs never contended below that the City failed to carry its initial burden under Rule 56, and thus Plaintiffs have waived the argument for purposes of appeal. *See Intercontinental Travel Mktg.*, 45 F.3d at 1286.

Moreover, the City carried its burden. *See* AOB at 55-57. In its summary judgment motion, the City repeatedly emphasized the lack of evidence supporting an equal protection claim, in-

cluding a "class of one claim." For example, the City argued that any difference in treatment could not have been intentional because the City staff person who handled Plaintiffs' applications knew nothing about the approval process for the Pacific East Mall sign. SER 1:104 n.8. Likewise, the City noted that it could not have intentionally treated Plaintiffs differently from other sign permit applicants based on the content of Plaintiffs' proposed speech because Plaintiffs never told the City what messages they intended to display on their signs. SER 1:103. Having pointed out the absence of evidence supporting essential elements of Plaintiffs' equal protection claim, the City met its initial burden under Rule 56, and the burden shifted to Plaintiffs to produce that evidence. They did not do so.

### B.    Plaintiffs Failed to Produce Evidence in Support of Their Equal Protection Claim.

To survive summary judgment on their class-of-one claim, Plaintiffs were required to produce evidence that the City had intentionally treated them differently from others similarly situated. *See N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) ("A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as

opposed . . . to being an accident or a random act.'") (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)).

Despite much hand-waving and innuendo, Plaintiffs never produced this evidence. As the district court recognized, Plaintiffs' evidence established only that the City had previously permitted a freeway-facing sign with off-site advertising at the Pacific East Mall. ER 1:88. Plaintiffs did not offer any evidence that Plaintiffs and the applicants for the Pacific East Mall sign were similarly situated. *See* ER 1:88-89. Nor did Plaintiffs offer evidence that any differential treatment was intentional. *Id.*

As this Court has held, there can be no intentional discrimination—and hence no denial of equal protection—where the decision maker was unaware of any differential treatment. *See N. Pacifica LLC*, 526 F.3d at 486; *cf. Gerhart v. Lake Cnty.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (holding that the decision makers were aware of the differential treatment). Here, Plaintiffs provided no evidence suggesting that the City planning technician who handled Plaintiffs' applications, Ruby Benjamin, knew anything about the Pacific East Mall sign approval—in fact, all of the evidence in the record is to the contrary. *See* ER 1:88-89, 5:929 (Pacific East Mall representative saying he dealt

with a planner named Lori Brown). As a result, the district court properly found that Plaintiffs had not identified any genuine issue of material fact requiring a trial on their equal protection class-of-one claim.

Plaintiffs' insinuation that the City's approval of the Mall sign was the product of a nefarious quid pro quo is also unfounded. AOB at 58-60. At most, the evidence in the record shows that a councilmember set up a meeting between the owner of the Mall and a City planner, and then occasionally asked the planner about the status of the mall sign. SER 1:66-68, 74, 75, 77. Contrary to Plaintiffs' assertions, the evidence does not show that "the owner of the Pacific East Mall[] was originally denied a billboard sign by the City planning department," or that the councilmember approved the sign after receiving campaign contributions from the Mall's owner. *See* AOB at 55, 58-59. On the contrary, the councilmember repeatedly testified that he could not and would not direct City staff to take any action or reach any decision. SER 1:79-81. Moreover, he testified that citizens and businesses regularly come to him for assistance in working with the City, and that he considers all such requests important. SER 1:78. This evidence is all unrebutted. Nor is

there any evidence that Plaintiffs ever sought the councilmember's assistance. *See* ER 1:89. In short, Plaintiffs have failed to demonstrate that the conduct of the councilmember or anyone else was illegal, unethical, or otherwise improper.

On appeal, Plaintiffs attempt to shore up their unsuccessful equal protection argument by citing a second sign that they assert was approved by the City in violation of the Old Ordinance: the El Portal Church sign. AOB at 60. While some evidence of the El Portal Church sign was buried in the nearly 500 pages of exhibits to Herson's declaration in opposition to summary judgment, Plaintiffs never referred to it, let alone explained its significance, and the district court was "not required to comb the record" to find it. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

Moreover, this new evidence—which is nothing more than the cover page of the City's planning file and some photographs of the proposed sign apparently submitted by the church (ER 4:730, 732)—does not fill the gap in Plaintiffs' equal protection argument because, like the evidence of the Mall sign, it too does not demonstrate that Plaintiffs were similarly situated to the

church or that the City intentionally treated the two permit applicants differently. *See N. Pacifica LLC*, 526 F.3d at 486.

Finally, in passing, Plaintiffs also assert that the City's approval of these other signs is evidence of "unfettered discretion" exercised by City officials under the Old Ordinance and that this "unfettered discretion" establishes an equal protection violation. AOB at 60-61. However, Plaintiffs never flesh out these assertions with argument, and the cases they cite provide no illumination because they are not equal protection cases. *See id.* (citing cases). Therefore, Plaintiffs have waived whatever argument they intended to advance by these broad assertions. *See Nilsson, Robbins*, 854 F.2d at 1548.

### C.    Plaintiffs Failed to Plead or Present Any Evidence that a City Policy or Custom Caused Their Alleged Equal Protection Injury.

In light of its holding dismissing the equal protection claim, the district court did not need to reach the City's defense under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), but that defense provides yet another basis on which this Court should affirm the district court's grant of summary judgment. *See Gems-By-Gordon*, 649 F.2d at 712.

*Monell* provides that municipalities are liable for their employees' actions only if the alleged violation arises from a municipal "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." 436 U.S. at 694. To establish an official policy or custom sufficient for *Monell* liability, a plaintiff must show a constitutional violation resulting from "(1) an employee acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a 'final policymaker.'" *Delia v. City of Rialto*, 621 F.3d 1069, 1081-82 (9th Cir. 2010), *rev'd on other grounds by Filarsky v. Delia*, 132 S.Ct. 1657 (2012).

Here, Plaintiffs seek to hold the City liable for the actions of Ruby Benjamin, the City planning technician who handled their applications. AOB at 10; ER 5:1032-33. As a result, they must show that Benjamin treated Plaintiffs differently pursuant to an official policy or custom. Plaintiffs have not argued in their Opening Brief that their alleged harms arose from any such policy or custom.

In any case, there is no evidence that the City treated Plaintiffs differently from others pursuant to a City policy or

custom. The Old Ordinance cannot supply that policy, as nothing in the Old Ordinance allowed the City to ignore its provisions to approve signs from favored speakers. Plaintiffs have never identified any other policy or custom that they claim was the cause of their equal protection injuries. Nor was Benjamin, a planning technician, a "final policymaker" for the City. *See Delia*, 621 F.3d at 1082. Whether an official has final policymaking authority "is a question of state law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). The Old Ordinance vested final policymaking authority in the City Council by making all permitting decisions appealable to that body. ER 5:1106-07 (Old Ordinance § 15.04.930.120(B)-(C)). Therefore, summary judgment was also proper because Plaintiffs failed to plead or present any evidence that implementation of a City policy or custom denied them equal protection.

## VIII. The District Court Properly Sanctioned Plaintiffs for Destroying Evidence During and Shortly Before Litigation.

Courts may impose monetary sanctions in the amount of extra discovery costs caused by spoliation, including the cost of the sanctions motion. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006). An appellate court must not "disturb the district

57

court's choice of sanction" absent a "definite and firm conviction that the district court committed a clear error of judgment." *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 422 (9th Cir. 2011).

Plaintiffs' cursory challenge to the sanctions order deserves little attention. As an initial matter, Plaintiffs have waived that challenge. An appellant's brief must set forth "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies." Fed. R. App. P. 28(a)(9)(A). Plaintiffs' one-and-a-half-page argument does not include a single citation to any supporting authority. Plaintiffs have accordingly waived any claim of error. *See Nilsson, Robbins*, 854 F.2d at 1548.

Plaintiffs first argue that the City did not prove that Herson had a specific intent to frustrate discovery. AOB at 63. There is no such requirement. Rather, a court need only determine that a party acted willfully, that is, "if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Id.* at 959 (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).

Here, the district court properly sanctioned Plaintiffs because Herson knew that his actions would destroy potentially relevant evidence. Herson has never claimed he was unaware of the potential relevance of his e-mails with lessors or the files on his computer before he destroyed them. Instead, Plaintiffs argue that Herson only re-installed his operating system in response to computer problems. AOB at 63. Herson's motive, however, is irrelevant. All that matters is that he had "some notice" that his actions would also delete potentially relevant evidence. *See Leon*, 464 F.3d at 959. Herson knew re-installing the operating system would delete the files on his computer, but he nonetheless proceeded without first consulting an expert, who could have protected any relevant data. ER 2:199, 318. Similarly, Herson was already planning to file suit in early 2009, ER 2:210-12, so he must have known that his e-mails with lessors were potentially relevant to the case before he deleted them, ER 2:208-09.

Plaintiffs also argue that the City failed to show prejudice because it already had hard copies of the files it sought from Herson's computer and that it "does not genuinely contend that it was unable to obtain necessary litigation discovery." AOB at

63. On the contrary, Plaintiffs' spoliation prejudiced the City by forcing it to pay for a computer forensic specialist to inspect Herson's hard drive. It was the cost of that inspection that the City sought to recover, along with the cost of the motion. SER 1:51. Moreover, the City was unable to obtain relevant documents because of Plaintiffs' spoliation. By deleting the files on his computer, Herson destroyed electronic copies of documents that may have contained relevant metadata, including the date of their preparation. SER 1:46-47. Similarly, by deleting e-mails with putative lessors, Herson destroyed evidence that may have shown that Plaintiffs' plans for leasing signs, and thus their damages claims, were speculative.

"When the trial court has imposed sanctions for failure to comply with discovery [rules] and the order is appealed, as a general rule attorney's fees should be awarded where the discovery order is upheld." *Mickwee v. Hsu*, 753 F.2d 770, 770 (9th Cir. 1985). Therefore, if the Court upholds the sanctions order, the City will move under Circuit Rule 39-1.6 for its attorneys' fees and costs incurred in defending the order on appeal.

## CONCLUSION

The City respectfully requests that the Court affirm the judgment of the district court in its entirety. The City further requests that the Court award the City its costs on appeal and the attorneys' fees it incurred in litigating the appeal as to the spoliation sanction.

## STATEMENT OF RELATED CASES

Plaintiffs separately appealed the magistrate judge's order awarding sanctions for spoliation and the district court's affirmance of that order. Plaintiffs voluntarily dismissed both of those appeals.

DATED: May 29, 2012    SHUTE, MIHALY &
WEINBERGER LLP


By: s/ Matthew D. Zinn
    MATTHEW D. ZINN

Attorneys for Defendant and Appellee
CITY OF RICHMOND

61

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,709 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced roman typeface, 14-point New Century Schoolbook, using Microsoft Word 2007.

DATED: May 29, 2012      SHUTE, MIHALY & WEINBERGER LLP

By: s/ Matthew D. Zinn
      MATTHEW D. ZINN

Attorneys for Defendant and Appellee CITY OF RICHMOND

62

## <u>PROOF OF SERVICE</u>

***Herson, et al. v. City of Richmond***
***Docket No. 11-18028***

***U.S. Court of Appeals, 9th Circuit***

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the City and County of San Francisco, State of California.  My business address is 396 Hayes Street, San Francisco, California  94102.

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of  Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 29, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: May 29, 2012

By:  s/ Sara L. Breckenridge