——————————————————————————————————
**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
——————————————————————————————————
**No.  11-18028**

——————————————————————————————————

**JEFFREY  HERSON, an individual, and EAST BAY OUTDOOR,
INC., a California Corporation,
Plaintiffs-Appellants,
v.
CITY OF RICHMOND,
Defendant-Appellee.**
——————————————————————————————————

**APPELLANTS' REPLY BRIEF**

**D.C. No. 4:09-cv-02516-PJH
U.S. District of Court for Northern California, Oakland**
——————————————————————————————————

**FRANK C. GILMORE, ESQ.
Nevada Bar No. 10052
ROBISON, BELAUSTEGUI, SHARP & LOW
A Professional Corporation
71 Washington Street
Reno, Nevada 89503
Telephone:   (775) 329-3151
Facsimile:   (775) 329-7169**

**Attorneys for Plaintiffs-Appellants-
Jeffrey Herson and East Bay Outdoors, Inc.**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................. ii

**The City Does Not Address Herson's Claim
That The City Impermissibly Prohibits Political
Speech Oriented To The Freeway**............................................. 1

**The City Impermissibly Permits Regulates Sign
Types According to Content**...................................................... 2

**Herson's Applications Were Defective** ................................. 4

**The City Code Lacks Sufficient Time Limits For
Review** ........................................................................................ 7

**The City Concedes That the CUP And Design
Review Were Required When Herson Applied
for His Permits to Speak**............................................................ 9

**The City Does Not Address Herson's Challenge
That The Code Does Not Require Written Findings
When Reviewing A Permit To Speak**...................................... 10

**Herson Did Not Waive His Argument that the
Exemptions for Official Public Notices Is
Unconstitutional**...................................................................... 11

**Herson Challenges Exemptions Under The Old
Sign Code Are Similarly Unconstitutional.** ......................... 13

**The City's "But-For Cause" Argument Is A Red
Herring And Belied By The Record.** ...................................... 15

**Herson's Equal Protection Contention Was
Supported By Substantial Evidence.** ..................................... 16

**CERTIFICATE OF COMPLIANCE PURSUANT
TO CIRCUIT RULE 32-1**........................................................ 19

i

# TABLE OF AUTHORITIES

Citizens United v. FEC, 130 S.Ct. 876, 898 (2010). ........................................ 1

Desert Outdoor Advertising, Inc. v. City of Moreno Valley,
103 F.3d 814 (9th Cir. 1996). ............................................................ 10, 12, 13

Foti v. City of Menlo Park, 146 F.3d 629 (9th Cir. 1998)........................ 12, 13

Freedman v. Maryland, 380 U.S. 51, 58 (1965). ............................................ 7

G.K. Ltd. Travel v. City of Lake Oswego, 436 F.3d 1064 (2006). ........... 12, 13

Kaahumanu v. State of Hawaii, 2012 WL 2018171
(C.A.9 (Hawai'i)). ................................................................................ 5

Lamar Advertising v. Town of Orchard Park, 356
F.3d 365, 374 (2d Cir. 2004). ......................................................... 5

Long Beach Area Peace Network v. City of Long Beach,
574 F.3d 1011 (9th Cir.2009). ....................................................... 10

Minority Television Project , Inc. v. F.C.C., 676 F.3d
869 (2012). .................................................................................. 1

Reed v. Town of Gilbert, 587 F.3d 966, 976-78
(9th Cir. 2009). ......................................................................... 3, 4

Seattle Affiliate of the October 22nd Coalition to
Stop Police Brutality, Repression, & the Criminalization
of a Generation v. City of Seattle, 550 F.3d 788, 794
(9th Cir. 2008). .......................................................................... 10

Squaw Valley Development Co. v. Goldberg, 375 F.3d
936 (9th Cir. 2004). ................................................................... 17

Thomas v. Chicago Park Dist., 534 U.S. 316,
122 S.Ct. 775 (2002). ................................................................. 8

<u>United States v. Alvarez</u>, _____ U.S. _____ (2012) . ..................................... 2

<u>Valley Outdoor, Inc. v. City of Riverside</u>, 337 F.3d 1111 (2003) ........................................................................ 6

**Statutes**

*Cal. Gov't Code Sec 65920 st seq* (2). ........................................................... 7

**<u>Ordinances</u>**

Old Code Richmond Municipal Code § 15.06.060............................ 13, 14, 15

Old Code Richmond Municipal Code § 15.06.080......................................... 5

Old Sign Code Richmond Municipal Code § 15.06.080 (c)(5). .................... 3

Old Code Richmond Municipal Code § 15.06.080 (3).................................... 1

Richmond Municipal Code §  15.06.70........................................................ 12

Richmond Municipal Code § 15.06.070(A)(ii)............................................. 11

Richmond Municipal Code § 15.06.080(C).............................................. 5, 15

Richmond Municipal Code § 15.06080(C)(2)............................................... 4

Richmond Municipal Code § 15.06.080 (3)................................................... 1

Richmond Municipal Code § 15.04.910......................................................... 9

Richmond Municipal Code § 15.04.930. ....................................................... 9

**The City Does Not Address Herson's Claim that the City Impermissibly Prohibits Political Speech Oriented to the Freeway.**

In its Answering Brief, the City of Richmond ("City") failed to discuss, mention, or address the fact that the former Richmond ordinance (the "Old Sign Code") § 15.06.080 (3) proscribed Herson's and East Bay Outdoor, Inc.'s (hereinafter collectively referred to as "Herson") political speech while allowing commercial Freeway Gateway Signs.[1]  First, the failure to address the outright ban on speech is tantamount to a concession that the ban is unconstitutional.  Second, this Court, and the Supreme Court, has long held that content-based proscription of political speech is unconstitutional. Clearly, under the holding of <u>Minority Television Project , Inc. v. F.C.C.,</u> 676 F.3d 869 (2012) political speech is "entitled to the most <u>exacting degree of First Amendment protection</u>."

In order for the City's prohibition of political speech oriented to the freeway (§ 15.06.080 (3)) to pass the heighten scrutiny test the City was required to  "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."  <u>Citizens United v. FEC</u>, 130 S.Ct. 876, 898 (2010).

---

[1] Herson's Opening Brief, (p. 40) set forth Herson's challenge to the City's outright ban on political speech.

Here, the City never provided any evidence that the ban on political speech furthered any compelling government interest or that the restriction was narrowly tailored.  See also <u>United States v. Alvarez</u>, _____ U.S. _____ (2012) ("the Constitution demands that content based restrictions on speech be presumed invalid, and that the government bears the burden of showing their constitutionality")

The City contended that Herson's proposed political signs violated the City's independent height and size requirement. However, based on the City's prior ban on political speech, the City had no applicable height or size limit with which Herson could have complied.  Moreover, as explained in the Opening Brief, Herson alleged in his Complaint that he would accept the largest sign the Code would constitutionally permit.

### The City Impermissibly Permits Regulates Sign Types According to Content.

The City raises a significant red-herring in its Answering Brief.  The City contends that Herson's proposed signs were impermissible Type-B freestanding signs.  The City contends that because Herson's proposed signs were Type-B Freestanding Signs, they are not permitted to display speech oriented to the freeway.  What the City completely ignores is that the Code unconstitutionally defines signs according to their content and prefers

certain types of signs – according to their content – when oriented to the freeway.  Under the Code, a Type-B freestanding sign is a sign of a type of a physical structure.  That type of sign is not defined according to its content. However, the Old Code, § 15.06.080 (c)(5), defines certain signs according to both the physical characteristics (the structure) as well as the content of the sign.  Under the Old Sign Code § 15.06.080 (c)(5), only Major Gateway Area Identification Signs and Development Signs may be oriented to the freeway.  Both Major Gateway Area Identification Signs and Development Signs are defined by their content and not by their physical structures.  The reality is that a Major Gateway Area Identification Sign and a Development Sign could be either  a Type "A" (single pole) or Type "B" (multiple pole) freestanding sign, but could be permissibly oriented to the freeway <u>based solely on its content</u>.

The City, in appearing to recognize that it defines which signs are permissibly oriented to the freeway based on content, argues that Major Gateway signs <u>might</u> have been an exception to the Type-B freestanding provision, however, they argue it was content neutral under the holding of <u>Reed v. Town of Gilbert</u>, 587 F.3d 966, 976-78 (9th Cir. 2009).  The City states that "Its not meaningfully different from the category of . . . . Temporary Directional Signs Relating to a qualifying event."

3

However, <u>Reed</u> is clearly distinguishable. <u>Reed</u> dealt with signs that were for <u>temporary qualifying events</u>.  The City has not provided any evidence in support of its position that any Major Gateway Signs were temporary, or for a qualifying event.

Furthermore, the City's disingenuous argument that even if Herson's signs were entitled to the same benefit as a Major Gateway Sign, his proposed signs were to  big.  Herson has provided significant evidence in the Record showing that numerous signs within the City exceed the City's Type-B maximum size limitation.  It is undisputed  that the City approved a Freeway Gateway sign in excess of 83 feet in height, and thousands of square in area (ER 422, Doc#111-10), which were many times larger than any of the structural drawings proposed by Herson.  This further buttresses Herson's argument that freeway facing signs were not limited to the more restrictive Type-B requirements, or the requirements set forth in § 15.06.080(C)(2) (one square foot for every one linear foot of street frontage or 20 square feet, whichever was greater).

## Herson's Applications Were Defective

The City contends that Herson's applications were so incomplete and defective that Herson lacks standing to bring their suit.  The City is wrong.  As this Court has recently held:

4

> Plaintiffs who challenge a permitting scheme are not
> required to show that they have applied for, or have
> been denied, a permit.

Kaahumanu v. State of Hawaii, Case No. 10-15645, June 6, 2012 (9th Cir.)

Such is the case here.  Herson made a facial challenge to the entire

permitting scheme of the Richmond Sign Code.  Herson achieved Article III

standing in doing so.  This holds true whether or not the City approved or

reviewed any permit to speak.

As Judge Sotomayor wrote for the Second Circuit in Lamar

Advertising v. Town of Orchard Park, 356 F.3d 365, 374 (2nd Cir. 2004),

> That Lamar only sought permits for those
> signs that were larger than the size allowed,
> however, is of little consequence; Lamar need not
> have first sought and been denied *any* permit prior
> to filing a facial challenge.

When Herson applied for a permit on June 26,2009, the City had

three viable constitutional options:  advise Herson that the applications

were incomplete, approve them, or deny them on the spot because they

were not allowed under § 15.06.080(C) of the Old Code.  The City chose the

latter option, denying them based upon § 15.06.080(C) of the Old Code.

The City's argument that Herson lacks standing because of alleged

deficiencies in their permit applications is, in any event, foreclosed by the

City's own evidence and by other evidence in the record.  The City admits

5

that its normal procedure is to assign a planner to an application and to notify the applicant if any items are missing from the application. (Motion at 15:7-11; Mitchell Declaration (ER 874-915, Doc. No. 91). The notification takes the form of an "incomplete letter." (Motion at 15:12-14; Mitchell Decl., Doc. No. 91 (ER 874-915), Doc. No. 39.) Thus, the evidence shows that the City treated Herson's applications differently than others, and the City cannot rely on alleged permit requirements when its own policy is to allow permit applicants an opportunity to cure any alleged deficiencies. Indeed, had the City notified Herson of any alleged deficiencies Herson would have remedied them. Herson Dec. 111 (ER 329). This court previously held in <u>Valley Outdoor, Inc. v. City of Riverside</u>, 337 F.3d 1111 (2003) deficiencies of a meager variety could be remedied by a simple correction letter, here the City rejected Herson's applications on the spot and said nothing about the applications as being incomplete. Regardless of whether Herson's sign permit applications were complete, because Herson's proposed speech was clearly banned, and Herson made a facial attack to the entire permitting scheme, Herson obtained standing regardless of the contents of his applications.

/ / /

6

**The City Code Lacks Sufficient Time Limits for Review.**

The settled rule in this Circuit is that "a system of prior restraint avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." Freedman v. Maryland, 380 U.S. 51, 58 (1965).

The City argues that Herson lacks standing to challenge RMC's lack of time limits, which is one of the basic fundamental requirements of a constitutional prior restraint.  The City hangs it hat on the fact that Herson were immediately denied by the City and therefore time limits are inapplicable.

The City misunderstands Herson challenge.  Herson is not complaining that when their applications were rejected at the counter the City did not have time limits in place.  What Herson is complaining about, is that where, as here, Herson is required – in order to be permitted to speak – to subject himself to mandatory **Design Review** or  **Conditional Use Permit** process that place no limits on when the City must act on a permit application, his constitutional rights have been violated and the scheme must fail.

Although the City points to the *Permit Streamlining Act* as the City's bellwether for time limits, that guideline fails to pass constitutional muster.

7

*Cal. Gov't Code Sec 65920 st seq* (2) requires approval or denial of a proposed project within a specific period of time (60, 90, or 180 days) from the completion of state mandate environmental review. However, the City can indefinitely delay the approval of a sign permit request by delaying the required environmental study, and only 60, 90, or 180 days after its study is completed is the City required to act on the applicant's request. Adequate time limits are essential when a government is approving or denying a permit that could result in censorship of certain viewpoints or ideas. Here, there are no stated limits. In Thomas v. Chicago Park Dist., 534 U.S. 316, 122 S.Ct. 775 (2002), the Court held that "time limits are not *per se* required when the licensing scheme is content-neutral. However, unlike in Thomas, Richmond's permitting scheme fails that content neutral test. Richmond's Design Review and Conditional Use permit process requires that the City make findings that:

> **the location, size, design, and characteristics of the proposed project will be compatible with and will not be detrimental to the public health, safety, or welfare of persons residing in or working in or adjacent to the proposed project.**

/ / /

/ / /

8

Accordingly, the City's Design Review and Conditional Use permitting schemes offer unfettered discretion to the City and are unconstitutional, as set forth below.

### The City Concedes That the CUP And Design Review Were Required When Herson Applied for His Permits to Speak.

The City has all but conceded that under RMC § 15.04.930 and § 15.04.910 sign applicants were REQUIRED to go through the City's discretionary Design Review or Conditional Use Permit process. (See City's Motion for Summary Judgment, Doc. # 88, p. 25:3-10) ("Although the Old ordinance had incorporated these provisions by reference for approval of some signs once the City repealed the Old Ordinance, those provisions no longer applied"). When Herson applied for his permits, the unconstitutional CUP and Design Review provisions were required of all sign applicants. The City could have used those unconstitutional provisions to deny Herson's speech. Accordingly, the fact that the CUP and Design Review processes were unconstitutional is relevant to Herson's case.

The City argues that Herson lacks standing to challenge the City's discretionary design review or conditional use permit process because the "City never applied them to him."

It has been said by this Court that:

9

> It is well established that one has standing to
> challenge a statute on the ground that it delegates
> overly broad licensing discretion to an
> administrative office, whether or not his conduct
> could be proscribed by a properly drawn statute,
> and whether or not he applied for a license.

Long Beach Area Peace Network v. City of Long Beach, 574 F.3d 1011, at

1020 (9th Cir.2009); see also Seattle Affiliate of the October 22nd Coalition

to Stop Police Brutality, Repression, & the Criminalization of a Generation

v. City of Seattle, 550 F.3d 788, 794 (9th Cir. 2008).

More tellingly, the City does not address whether the required

standards found in either the design review or conditional use permit

process are definite and objective.  The City's failure to address the

argument is tantamount to a concession that Herson's challenge to the CUP

and Design Review schemes are unconstitutional, as set forth in the

Opening Brief.

### The City Does Not Address Herson's Challenge That The Code Does Not Require Written Findings When Reviewing A Permit To Speak.

The City fails to address Herson's contention that when a government

actor attempts to enforce any content-based prior restraint, the government

must proved written reasons why they denied protected speech.  See Desert

Outdoor Advertising v. City of Moreno Valley, 103 F.3d 814 (9th Cir. 1996).

As explained by this Court, when the City permitting scheme fails to require written findings for permit applications,  the City ordinance cannot possible pass constitutional muster.

Herson Challenges the exemptions under First Amended Ordinance at pg (48) in Herson's Opening Brief, Herson challenges § 15.06.070(A)(ii) exemptions for  "governmental and other signs for control of traffic and other regulatory purposes, including street signs, danger signs, railroad crossing signs, and signs of public service companies showing the placement or location of underground public utility facilities".

The City of Richmond failed to address these previously challenged sign exemptions which were part of the first amended sign ordinance under No. 29-09 (ER 1156-1178).  The City's failure to address the exemptions is a concession that Herson's challenges have merit. [4]

### Herson Did Not Waive His Argument that the Exemptions for Official Public Notices Is Unconstitutional.

The City next contends that Herson's argument that the exemptions for "Official Public Notices, and notices posted by public officers in

_____

[4]The City acknowledges at page 37 of the Answering Brief that the exemptions in fact remained, however, the City makes no argument to support the position that the exemptions are content neutral or constitutional.

performance of their duties" is unconstitutional was waived by Herson.

To the contrary, Herson alleged in the District Court that the exemption for "official public notices" was content based. See Docket # 109 pg ( 24) Opposition Motion For Summary Judgment. ("The City's defense of the content-based provision found in section 15.06.070 of the New ordinance likewise fails.") Herson properly preserved the challenge, and therefore, his argument on appeal is not waived.

In any event, the exemption is content based. Under the Code, the City could post an "Official Public Notice" which displays " Come attend the June 25, meeting at City Hall to support a new tax increase." However, Herson could not erect a sign that says "Don't attend the meeting at City Hall; oppose the tax increase." Because "Official Public Notices" is not defined anywhere in the ordinance, the City is free to post whatever sign that it feels is official, while simultaneously barring Herson's non-commercial speech; thereby giving greater preference to some non-commercial speech over other  non-commercial speech. See Desert Outdoor Advertising, Inc. v. City of Moreno Valley, 103 F.3d 814 (9th Cir. 1996) and Foti v. City of Menlo Park, 146 F.3d 629 (9th Cir. 1998).

The City agues that assuming Herson did raise the issue properly, their argument fails under the holding of G.K. Ltd. Travel v. City of Lake

12

Oswego, 436 F.ed 1064 (2006).  In that case the City exempted certain

signs from the fee and permitting requirement.  G.K. Ltd. explained:

> In this case, the Sign Code reflects the City's preference for not subjecting certain entities —public agencies, hospitals and railroad companies — to the requirements of the permitting and fee scheme.

Foti distinguished G.K. Ltd:

> In *Foti,* we evaluated a Menlo Park ordinance banning all signs on all public property.  The law, however, **exempted** 'open house,' safety, traffic and public information signs. Relying on our earlier ruling in *Desert Outdoor Advertising v. City of Moreno Valley,* 103 F.3d 814, 820 (9th Cir. 1996), we concluded that these exemptions were **content based** 'because a law enforcement officer must read a sign's message to determine if the sign is **exempted from the ordinance**.'

Foti, 146 F.3d at 636.

Here, the City has ignored the warning of this Court's prior holdings

and has decided to continue exempting "Official Public Notices" and

"Traffic Control and Danger" signs from the City's entire sign code.  As a

result, the exemptions are unconstitutional and the ordinance cannot be

saved.

### Herson Challenges Exemptions Under The Old Sign Code Are Similarly Unconstitutional.

The City argues that Herson did not challenge Old Code § 15.06.060

13

which exempted five categories of signs from the City's overall sign scheme; they included: **Official Public Notices, Regulatory And Warning Signs, Temporary Display Posters, Flags And Emblems and Historic Signs.**

Herson expressly challenged these exemptions in his Complaint.

Herson's First Amended Complaint alleges:

> In exempting certain content from its Sign Code, Richmond illegally preferences some speakers and viewpoints over others. "Temporary public display posters," defined as those "without independent structural support, in connection with civic and noncommercial health, safety, and welfare campaigns" are exempted "provided that such posters shall be removed within 10 days after the conclusion of the campaign." "Flags and emblems," including "temporary displays of patriotic, religious, charitable or civic character" are exempt. Displays that Richmond considers unpatriotic, irreligious, on-charitable, or private, however, require a permit. Additionally, "commemorative signs, symbols, memorial plaques and **historical tablets**, placed by historical societies" are exempt irrespective of their size, location and duration. These content and viewpoint-based exemptions render Richmond's limitations on other sign content unconstitutional.

In his Second Amended Complaint (ER 1186, line. 22) , Herson alleges:

> Old Code Section 15.06.060 provides that signs containing noncommercial speech, but not political speech, are exempted from chapter 15.06 of the Old Code. Accordingly Signs 1through 13 were barred under the Old Code.

14

Herson's Third Amended Complaint alleges (ER 1059, line 4):

> Old Code § 15.06.060 provides that signs containing noncommercial speech, but not political speech, are exempted from chapter 15.06 of the Old Code. Accordingly Signs 1through 13 were barred under the Old Code.

Not only did Herson allege that § 15.06.060 was content based and unconstitutional, Herson went even further and attached the relevant code sections to the complaint. The City's argument that Herson waived these arguments, or failed to preserve them below is without merit.

### The City's "But-For Cause" Argument Is A Red Herring And Belied By The Record.

The only evidence presented below shows that the City denied Herson's permits to speak solely pursuant to section 15.06.080(C) of the Old Sign Ordinance, which generally bans advertising signs and non-commercial signs within 60 feet of the Richmond Parkway. (Third Amended Complaint, Doc. No. 63, Ex. 6.) The Permit Applications did not even specify the size of the signs, so that could not have been the reason for the denial. City staffer Ruby Benjamin denied the applications on the spot without looking at anything other than the applications, so the other alleged deficiencies cited by the City could not have been the reason either. (Benjamin Depo., Ex. C to Olson Decl., at 35:1-3.).

15

## Herson's Equal Protection Contention Was Supported By Substantial Evidence.

The City incorrectly contends that "Herson did not offer any evidence that the applicants for the Pacific East Mall Sign were similarly situated." This is false.  In Herson's Third Amended Complaint, second claim for relief, Herson alleged with exacting detail Herson's "class of one" violation:

> Plaintiffs are informed and believe, and thereon allege, that when the OLD CODE was in effect, third parties similarly situated to Plaintiffs were allowed by RICHMOND to display signs, and, in some (and possibly all) cases, are continuing to display signs, similar to those signs desired by Plaintiffs.  Such similarly situated signs include, but are not limited to, sign(s) located at or immediately adjacent to 3288 Pierce Street, Richmond, CA 94804.  Such similarly situated signs include, but are not limited to, commercial off-site and on-site signs, including sign(s) that were converted to an LED display. Plaintiffs intended to erect similar signs in similar locations, as described above, but were prevented from doing so by RICHMOND's denial of their permit applications.  Additionally, Plaintiffs intended to place similar content, also as described above, as that which appeared on the similarly situated signs but were prevented from doing so because their permit applications were denied. RICHMOND's preferential treatment for third parties with other, similarly situated signs indicates that RICHMOND had a discriminatory purpose in allowing the signs of third parties and denying those of Plaintiffs.

Further, Herson argued in the District Court that he was similarly situated

16

to the Pacific East Mall sign owners, (see Opposition to Motion for Summary Judgment, ER 328-339, Herson Decl. Doc. 111 and ER 790, Ex. 35, Doc. 113-13).

The City next contends if it did treat Herson differently, it was not intentional.  This is a question of fact, and not appropriate for summary judgment.  Even so, the City's arbitrary application of the sign ordinance reveals disparate treatment by the City.  Squaw Valley Development Co. v. Goldberg, 375 F.3d 936 (9th Cir. 2004).  The City argues that planning technician Ruby Benjamin denied Herson sign applications without any knowledge of the nefarious acts committed by Councilman Bates when he approved the Pacific East Mall Sign.  However, her knowledge of that act is irrelevant.  Ruby Benjamin herself disregarded the provisions of the sign code when she approved the approved an LED (Electronic Message sign) for El Portal Church of Christ, (ER 732, Doc#113-9, p. 7) in  violation of RMC 15.04.930.  The required Design Review, as explained above, was ignored by the City – specifically Planner Ruby Benjamin – when the sign was approved.  ER 730.   As a result, it is conclusive that Ms. Benjamin was personally aware that "one class" of sign applicants received favorable treatment over another class of applicants.  As a result, Herson has made an

/ / /

17

adequate showing that the City violated Herson's rights to equal protection.

DATED:    This 29th day of June, 2012.

ROBISON, BELAUSTEGUI, SHARP & LOW
A Professional Corporation
71 Washington Street
Reno, Nevada 89503

 /s/ Frank C. Gilmore
FRANK C. GILMORE - NV Bar # 10052
Attorneys for Plaintiffs-Appellants -
Jeffrey Herson and East Bay Outdoors, Inc.

## <u>CERTIFICATE OF COMPLIANCE PURSUANT<br>TO CIRCUIT RULE 32-1</u>

### U.S. Court of Appeal Docket:<br>No.  11-18028

I certify that pursuant to Fed. R. App. P. 32(a)(7)© and the Ninth

Circuit Rules 32-1, the attached Appellants' Reply Brief is proportionately

spaced with a typeface of 14 points or more, in Georgia font, generated in

the WordPerfect X3 word processing software and contains approximately

3,718 words.

DATED:     This 29th day of June, 2012.

ROBISON, BELAUSTEGUI, SHARP & LOW
A Professional Corporation
71 Washington Street
Reno, Nevada 89503

/s/ Frank C. Gilmore
FRANK C. GILMORE - NV Bar # 10052
Attorneys for Plaintiffs-Appellants -
Jeffrey Herson and East Bay Outdoors, Inc.

## <u>CERTIFICATE OF SERVICE</u>

### U.S. Court of Appeal Docket:
### No. 11-18028

I hereby certify that I am an employee of Robison, Belaustegui, Sharp & Low and that on this date I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

DATED:     This 29th day of June, 2012

/s/ Mary Carroll Davis                    
MARY CARROLL DAVIS